## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOE TEIXEIRA
8217 Wooded Brook Drive
Elk Grove, CA 95758,

PATTY JOHNSON
8713 Tulare Ct.
Elk Grove, CA 95758,

LYNN WHEAT
8770 Williamson Drive
Elk Grove, CA 95624, and

STAND UP FOR CALIFORNIA!
P.O. Box 355
Penryn, CA 95663,

        Plaintiffs,

   v.

UNITED STATES DEPARTMENT OF
INTERIOR
1849 C Street, N.W.
Washington, D.C. 20240,

RYAN ZINKE, in his official capacity as Secretary
of the Interior
1849 C Street, N.W.
Washington, D.C. 20240,

BUREAU OF INDIAN AFFAIRS,
1849 C Street, N.W.
Washington, D.C. 20240, and

MICHAEL BLACK, in his official capacity as
Acting Assistant Secretary-Indian Affairs,
1849 C Street, N.W.
Washington, D.C. 20240,

        Defendants,

   and

WILTON RANCHERIA, CALIFORNIA,

        Intervenor-Defendant.

Civil Action No. 1:17-cv-00058-RDM

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiffs, Joe Teixeira, Patty Johnson, Lynn Wheat, and Stand Up for California!, by and through their counsel, hereby allege as follows:

## I.      NATURE OF ACTION

1.       This is an action for declaratory and injunctive relief brought by Plaintiffs challenging a January 19, 2017, Record of Decision ("ROD") approving an application to have 36 acres of land in the City of Elk Grove, California ("Elk Grove Site") acquired in trust for the Wilton Rancheria for a casino. For two and a half years, the Elk Grove community understood that the Wilton Rancheria had applied to have 282 acres of land in Galt, California ("Galt Site")—a town 12 miles south of Elk Grove—acquired in trust for casino development. Federal Register notices and an environmental impact statement ("EIS") the Bureau of Indian Affairs ("BIA") prepared for the Galt project confirmed the same. In July of 2016, however, the Wilton Rancheria indicated that it would prefer to build a casino in Elk Grove. BIA did not acknowledge the change or answer inquiries from the public until November 17, 2016, when it circulated a Notice of (Gaming) Land Application. A month later, BIA announced that it had completed a final EIS for public comment.

2.       The sudden flurry of activity beginning after the November 8 election suggested that Defendants were racing to issue a trust decision and acquire title to the land before the change of Administration on January 20, 2017.  Plaintiffs repeatedly reached out to the U.S. Department of the Interior ("Interior") regarding timing, public notice, related state proceedings, property encumbrances, and related issues. But Defendants dismissed those concerns and rebuffed Plaintiffs' requests for a modest delay in acquiring title to allow them the opportunity to seek emergency judicial relief. Plaintiffs filed an emergency motion for temporary restraining order ("TRO") in this Court on January 11, 2017 (in anticipation of a pre-

January 20, 2017 decision), seeking an order enjoining Defendants from immediately acquiring title pursuant to 25 C.F.R. § 151.12.

3.      At the January 13, 2017 hearing on the emergency TRO, Defendants represented to the Court that they had not made a final decision on the trust application, that they could not anticipate when they might be ready to do so (the comment period on the final EIS did not close until January 17), and that the decision might not be to approve the trust acquisition. The Court denied Plaintiffs' motion. Three working days later—on January 19—the Department issued a 90-page decision approving the application.[1] The decision was signed by Lawrence Roberts, who signed as the Principal Deputy Assistant Secretary - Indian Affairs.

4.      Plaintiffs had no opportunity to return to the Court to seek a preliminary injunction. After the hearing on January 13, Defendants informed Plaintiffs that they could "formally" request an administrative stay of the title transfer, pursuant to 5 U.S.C. § 705, which Plaintiffs subsequently did on January 17, 2017. That request remained pending on January 19, at which time Defendants informed Plaintiffs that the Elk Grove Site "will not formally go into trust at least until they provide you a response to the 705 stay request" and that they did not know when that would happen. Plaintiffs' request for a meeting was ignored. On February 10, Defendants informed Plaintiffs that their stay request under 5 U.S.C. § 705 was denied, as was their request for a meeting. On the same day, BIA officials formally recorded acceptance of title in trust to the Elk Grove Site. Because Defendants simultaneously acquired title and denied the 5 U.S.C. § 705 request, Plaintiffs were unable to renew their motion for preliminary injunction or challenge the denial.

---

[1] In fact, the Wilton Rancheria and an investor executed a grant deed days before the decision was announced.

5.      On February 15, Plaintiffs asked for an explanation of the trust authority BIA exercised in accepting title in trust since the Principal Deputy Assistant Secretary who signed the ROD does not have authority to make final trust decisions under agency regulations. When Defendants offered no explanation, Plaintiffs filed an administrative appeal on February 21 because agency regulations demand exhaustion. Three days later, the Interior Board of Indian Appeals ordered any party who "contends that the ROD is final … [to] state the legal grounds and provide all information and evidence relied on for that contention." Neither BIA nor the Rancheria responded. Instead, on March 7, 2017, Michael Black—purportedly acting as Acting Assistant Secretary-Indian Affairs—assumed jurisdiction of the appeal under the regulations governing non-final agency action. Four months later, on July 13, 2017—without the opportunity for briefing provided in the regulations—Black stated that the January 19, 2017 ROD constituted final agency action.

6.      Chief Justice Roberts observed that the acceptance of land in trust is an "extraordinary assertion of power."[2] And like every power assigned to a federal agency, there are fundamental limits on its exercise—those imposed by Congress and those that an agency imposes on itself by regulation. Congress has also limited which government officials may exercise certain powers as a "structural safeguard" and to "curb Executive abuses of the appointment power."[3]  In this case, since at least November 9, 2016, Defendants have acted as though none of these limitations apply. But a change in Administration does not leave the outgoing officials free to ignore the substantive and procedural limits Congress has imposed or those they have validly promulgated. It should not be a race to get as much done as possible. To

---

[2] Oral Argument at 37:44, Carcieri v. Salazar, 555 U.S. 379 (2009) (No. 07-526), *available at:* https://www.oyez.org/cases/2008/07-526.
[3] *Edmond v. United States*, 520 U.S. 651, 659 (1997).

the contrary, statutory and regulatory limits require the exercise of caution and restraint to facilitate the orderly transition of power. Yet Defendants ignored virtually every limitation that applies.

7.      Plaintiffs seek a declaration that the Principal Deputy Assistant Secretary did not have authority to issue the January 19, 2017 ROD; that Defendants' February 10 Acceptance of Conveyance of the Elk Grove Site, as described in the Grant Deed dated January 16, 2017 and January 17, 2017, was ultra vires and without legal effect;[4] and that Defendants' serial delegations violate the Federal Vacancies Reform Act, 5 U.S.C. § 3345(a)(1) ("FVRA"). Plaintiffs also seek a declaration that Defendants violated the Administrative Procedure Act, 5 U.S.C. §§ 501 *et seq.* and 701 *et seq.*; the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101 *et seq.*; the Indian Gaming Regulatory Act ("IGRA"),  25 U.S.C. § 2701 *et seq.*; the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*, and the implementing regulations for each. The proper remedy is an order directing Defendants to invalidate the ROD and record a rescission of the February 10, 2017 acceptance of the grant deed, in order to remove the Elk Grove Site from trust.

## II.      THE PARTIES

8.      Plaintiffs Joe Teixeira, Patty Johnson, and Lynn Wheat are individuals who reside in Elk Grove, California. They are harmed by the decision to acquire land in trust and the environmental impacts of the proposed casino.

9.      Plaintiff Stand Up for California! ("Stand Up") is a California non-profit, public service corporation with a focus on gambling issues affecting California. Since 1996, Stand Up has worked with individuals, community groups, elected officials, members of law

---

[4] Exhibit 1.

enforcement, local public entities, the State of California and state and federal policy makers on matters related to gaming. Stand Up has supporters throughout California, including some residing in the Elk Grove area that will be affected by the environmental and economic impacts of the Rancheria's proposed trust acquisition and tribal casino.

10.     Defendant Department of the Interior ("Interior") is a department of the United States government. Interior is charged with responsibility for managing and administering lands of Indian tribes and for managing and administering federal programs related to Indian tribes.

11.     Defendant Ryan Zinke is the Secretary of the Interior ("Secretary"), and in that capacity is responsible for overseeing and managing all programs, activities, and operations of Interior relating to Indian lands and affairs. He is sued in his official capacity only.

12.     Defendant Bureau of Indian Affairs ("BIA") is a federal agency within Interior and is responsible for overseeing and managing all programs, activities, and operations of the Interior relating to Indian lands and affairs.

13.     Defendant Michael Black is the Special Assistant to the Director ("Special Assistant"), Bureau of Indian Affairs. According to Secretarial Order No. 3345, Mr. Black, as Special Assistant to the Director, has been delegated "[a]ll functions, duties, and responsibilities" of the Assistant Secretary-Indian Affairs. Section 4 of this Order limits Black's delegated authority to "only those functions or duties that are not required by statute or regulation to be performed only by the Senate-confirmed official occupying the position." He is sued in his official capacity only.

14.     Intervenor-Defendant Wilton Rancheria, California, is a federally recognized Indian Tribe.

15.     Interior and BIA are agencies within the meaning of the APA, 5 U.S.C. § 701(b)(1).

## III.     JURISDICTION AND VENUE

16.     The Court has both subject matter and personal jurisdiction under 28 U.S.C. § 1331; the APA, 5 U.S.C. §§ 702, 706; and 28 U.S.C. §§ 2201–2202; and this Court's equitable powers.

17.     Venue is proper in the federal district court for the District of Columbia under 28 U.S.C. § 1391(b) and (e)(2) because the United States, one of its agencies, and one of its officers in his official capacity are Defendants and a substantial part of the events affected by the litigation is related to this district.

18.     The United States waived sovereign immunity from suit under 5 U.S.C. § 702.

19.     There is an actual controversy between the parties that invokes the jurisdiction of this Court regarding decisions by, and actions of, the Defendants that are subject to review by this Court. It is the Department's position that there has been a final agency action that is reviewable by this Court.  25 C.F.R. § 2.6(c); 5 U.S.C. § 704.

## IV.     STATUTORY FRAMEWORK

20.     Pursuant to the California Rancheria Termination Act of 1958, Public Law 85-671 (72 Stat. 619), Congress ordered the Secretary to develop a plan that distributes the land and assets of certain enumerated Rancherias, including Wilton Rancheria. Under the Act, all Indians who received a portion of Rancheria assets are thereafter ineligible to receive federal services based on their status as Indians. The Act declares "all statutes of the United States which affect Indians because of their status as Indians shall be inapplicable to them."

21.     Section 5 of the Indian Reorganization Act of 1934 authorizes the Secretary to acquire land in trust for "Indians." 25 U.S.C. § 5108. Section 19 defines "Indians" to include "all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction." 25 U.S.C. § 5129. In *Carcieri v. Salazar*, 555 U.S. 379 (2009), the Court held that "the term 'now under Federal jurisdiction' in § [5129] unambiguously refers to those tribes that were under the federal jurisdiction of the United States when the IRA was enacted in 1934." *Id.* at 395.

22.     In 2013, the Department revised 25 C.F.R. § 151.12, entitled "Action on requests." Subsection (c) provides: "A decision made by the Secretary, or the Assistant Secretary - Indian Affairs pursuant to delegated authority, is a final agency action under 5 U.S.C. 704 upon issuance." 25 C.F.R. § 151.12(c). Subsection (d) provides: "A decision made by a Bureau of Indian Affairs official pursuant to delegated authority is not a final agency action of the Department under 5 U.S.C. 704 until administrative remedies are exhausted under part 2 of this chapter or until the time for filing a notice of appeal has expired and no administrative appeal has been filed." 25 C.F.R. § 151.12(d).

23.     The Federal Vacancies Reform Act, 5 U.S.C. §§ 3345-3349d, limits the authority of certain Executive Branch officials when a vacancy occurs in an office held by a Senate-confirmed Presidential appointee. Section 3348 of this Act prohibits any officer or employee of an agency from performing any function or duty of such vacant office when a statute or regulation requires that function or duty to be performed personally by the Senate-confirmed officer and only that officer.

24.     The Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.* ("IGRA"), prohibits gambling on lands taken into trust for Indians after 1988, except under limited

exceptions. Under the restored lands exception, the Secretary must find that the land to be taken into trust is part of "the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii); 25 C.F.R. § 292.7. In addition, the land must qualify as "Indian lands" under the Act. 25 U.S.C. § 2703(4).

26.     The National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), requires federal agencies to take a "hard look" at the environmental consequences of their proposed actions and make information on the environmental consequences available to the public. The implementing regulations at 40 C.F.R. Parts 1500-1508 establish how NEPA is to be implemented.

## V.     STATEMENT OF FACTS

### A.     Background on the Wilton Rancheria

26.     In 1928, the Department purchased approximately 37.88 acres to establish the Wilton Rancheria "for use by the landless California Indians." The Sacramento Indian Agency selected the site in November 1927 for the approximately 33 families of 150 homeless Indians of various ethnological backgrounds residing in the vicinity.

27.     In 1935, the various Indians living on the Rancheria voted to organize under Section 16 of the IRA. The Assistant Commissioner of Indian Affairs approved their governing documents in 1936. Self-governance activities continued until approximately 1940. Between 1940 and 1952, there is no record of any self-governance activities.

28.     In 1952, residents voted to accept termination of federal guardianship. The Secretary included the Wilton Rancheria in the third round of proposed termination legislation, which Congress enacted as the California Rancheria Termination Act, Public Law 85-671 (Aug. 18, 1958).

29.     The Secretary distributed the assets of the Rancheria to the Indians then living on the Rancheria pursuant to a distribution plan approved by the Commissioner of Indian Affairs on July 6, 1959. On September 22, 1964, the Secretary published notice of termination of federal supervision over the Indians living on the Rancheria. 29 Fed. Reg. 13146 (Sept. 22, 1964).

30.     On May 21, 2007, the Wilton Miwok Rancheria Interim Tribal Council sued the United States as the "Wilton Miwok Rancheria" to be restored to federal recognition. Compl., *Wilton Miwok Rancheria v. Kempthorne*, No. 5:07-cv-02681-JF (N.D. Cal. May 21, 2007), ECF No. 1. The United States settled with the group on June 4, 2009, by stipulating that termination of the Wilton Rancheria was not lawfully executed and "restoring" the plaintiffs to the status as a federally recognized tribe. Judgment, *Wilton Miwok Rancheria v. Kempthorne*, No. 5:07-cv-02681-JF (N.D. Cal. July 16, 2009), ECF No. 62.

**B.     The Trust Application for the Galt Site**

31.     On December 4, 2013, BIA issued a Notice of Intent to Prepare an EIS for the proposed acquisition of the Galt Site in trust for the Wilton Rancheria. 78 Fed. Reg. 72928-01 (Dec. 4, 2013). The Notice states that the Rancheria applied to have "approximately 282 acres of fee land ... located within the City of Galt Sphere of Influence Area" acquired "in trust in Sacramento County, California, for the construction and operation of a gaming facility."

32.     BIA held a public scoping meeting in Galt on December 19, 2013, seeking public comment on the application for purposes of identifying issues to consider in the NEPA analysis. *Id.* BIA invited Galt to participate as a cooperating agency.

33.     In February 2014, BIA issued an EIS Scoping Report identifying the Galt Site as the proposed project. The Scoping Report identified five other reasonable alternatives,

including an approximately 28-acre site in Elk Grove—a portion of a larger approximately 100-acre site that was approved for development as an open-air mall.

34.     BIA issued a Notice of Availability for the draft EIS on the proposed Galt acquisition on December 29, 2015. 80 Fed. Reg. 81,352 (Dec. 29, 2015).

35.     On June 9, 2016, the Wilton Rancheria held a public meeting in Elk Grove to announce that it would prefer to have the Elk Grove Site acquired in trust for its casino.

36.     The Elk Grove Site is encumbered by a development agreement adopted by city ordinance in which the 100-acre site would be developed as an outlet mall in two phases. In the development agreement, the City of Elk Grove reserved the right, among other things, to grant or deny land use approvals; adopt, increase, and impose regular taxes, utility charges, and permit processing fees; adopt and apply regulations necessary to protect public health and safety; adopt increased or decreased fees, charges, assessments, or special taxes; adopt and apply regulations relating to the temporary use of land, control of traffic, regulation of sewers, water, and similar subjects and abatement of public nuisances; adopt laws not in conflict with the terms and conditions for development established in prior approvals; and exercise Elk Grove's power of eminent domain with respect to any part of the property.

37.     On September 27, 2016, Plaintiffs Joe Teixeira, Lynn Wheat, and Stand Up requested that BIA prepare a supplemental EIS to address the Rancheria's apparent change in its proposed project from the 282-acre Galt Site to the 28-acre Elk Grove Site. BIA did not respond to the request.

**C.     The Change in Proposed Project to the Elk Grove Site**

38.     On November 17, 2016, BIA issued a Notice of (Gaming) Land Application for the Elk Grove Site. On December 14, 2016, BIA published a notice of the final EIS, which

identified the 36-acre Elk Grove Site as the project proposal for the first time—not the original 282-acre Galt Site *or* the 28-acre alternative site in Elk Grove. *See* 81 Fed. Reg. 90379-01 (Dec. 14, 2016).  Two days later, on December 16, 2016, EPA issued a Notice of Availability of the final EIS in the Federal Register. *See* 81 Fed. Reg. 91169 (Dec. 16, 2016).

39.     Defendants' notice of availability for the final EIS changed the Proposed Action from the 282-acre Galt Site to the 36-acre Elk Grove Site. Defendants did not:

    a.   Prepare a supplemental EIS;

    b.   Provide notice of the change of the Proposed Action or seek public comment on the 36-acre Elk Grove Site before issuing a final EIS;

    c.   Adequately evaluate environmental impacts;

    d.   Circulate for public comment new reports related to economic impacts, cultural resources, traffic impacts, air quality modeling, and other issues never previously disclosed before issuing a final EIS;

    e.   Defendants did not respond to all comments included in the administrative record before issuing a final EIS; and

    f.   Defendants did not clearly or accurately relate facts and applicable laws.

40.     Between December 29, 2016 and January 9, 2017, Plaintiffs made several requests with the Secretary to delay the acquisition of title in trust upon final decision to allow Plaintiffs to seek preliminary injunctive relief from the Court. Defendants refused Plaintiffs' requests. Plaintiffs additionally filed comments on the trust application and the EIS, and raised questions regarding the Rancheria's eligibility for trust land.

41.     On January 11, 2017, Plaintiffs filed a complaint and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction in this Court asking the Court to enjoin Defendants from immediately acquiring title to the Elk Grove Site in trust upon final decision.  On January 13, 2017, the Court denied Plaintiffs' motion.

42.     In discussing possible schedules for briefing of their motion for preliminary injunction, counsel for Defendants informed Plaintiffs' counsel that the Department did not consider Plaintiffs' requests for a modest delay to have been formal requests for a stay, pursuant to 5 U.S.C. § 705.

43.     Plaintiffs and Defendants subsequently agreed not to proceed with preliminary injunction briefing, and Plaintiffs submitted a formal request for a stay under 5 U.S.C. § 705 on January 17, 2017.

44.     On January 18, 2017, Plaintiffs informed the Court that Plaintiffs would "review any final decisions and confer with Defendants at that time as to the necessity of and timing for seeking emergency and/or preliminary injunctive relief."  Dkt. 6 at 2.

45.     On January 19, 2017, the Principal Deputy Assistant Secretary signed a ROD that approved the Wilton Rancheria's trust application. That document does not:

   a.   Adequately address whether the Wilton Rancheria qualifies for trust land under the IRA or the California Rancheria Termination Act;

   b.   Accurately reflect that the Elk Grove Site is encumbered by restrictive covenants or take a consistent position with respect to their effect;

   c.   Adequately address whether land subject to restrictive covenants can qualify as "Indian lands" under IGRA;

   d.   Clearly address the applicability or effect of the restrictive covenants that run with the Elk Grove Site; and

   e.   Correctly conclude the Wilton Rancheria meets the requirements of the restored land exception to IGRA because the Wilton Rancheria "qualifies as a 'restored tribe'" and the Elk Grove site "qualifies as 'restored lands.'"

46.     Lawrence Roberts issued the ROD on the evening of January 19, 2017 in his capacity as Principal Deputy Assistant Secretary. He did not purport to act, and could not have legally acted, as Acting Assistant Secretary, pursuant to the Vacancies Reform Act, 5 U.S.C. § 3346(a). Under that Act, Mr. Roberts, who assumed the role of Acting Assistant Secretary on or

about January 1, 2016, was prohibited from serving as Acting Assistant Secretary for more than

210 days. Accordingly, any authority Mr. Roberts had to take action under 25 C.F.R. § 151.12

terminated on or about August 3, 2016.

**D.     Post-January 19, 2017 ROD Proceedings**

47.     Upon hearing that a decision might have been made, Plaintiffs contacted

Defendants through counsel on the evening of January 19, 2017 to request a copy of the ROD

and to confirm status of the title to the land.

48.     Defendants provided an incomplete copy of the ROD on January 19 and

informed Plaintiffs that the Elk Grove Site would not formally go into trust at least until

Defendants responded to Plaintiffs' § 705 stay request. Defendants did not know when their

response would be forthcoming.

49.     On January 23, 2017, Plaintiffs contacted Defendants through counsel to discuss

amending their complaint and the possibility of expedited review or of reaching an agreement

regarding the transfer of title. Plaintiffs also requested information regarding the timing of

Defendants' response to Plaintiffs' § 705 request.

50.     Defendants responded through counsel on January 24 that Defendants were still

considering Plaintiffs' § 705 request and they did not know when they would resolve that

request. Defendants also indicated that they would consider Plaintiffs' request to discuss an

agreement to alleviate the need for emergency or expedited proceedings but could not indicate

when they would respond.

51.     On January 26, 2017, Plaintiffs formally requested a meeting with Defendants

through counsel to discuss concerns regarding the "unprecedented nature" of the ROD and a

reasonable timeline for resolving Plaintiffs' challenge.

52.     On February 6, 2017, Plaintiffs contacted Defendants through counsel to obtain a response to their meeting request of January 26. Counsel for Defendants indicated that he believed that they were "still considering it."

53.     The morning of February 10, 2017, Westcor Land Title Insurance Company issued a chain of title guarantee to Boyd Gaming for the Elk Grove Site, subject to certain exclusions from coverage, including:

   a.   Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or environmental protection, or the effect of any violation of any such law, ordinance or governmental regulation, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Guarantee;

   b.   Rights of eminent domain or governmental rights of police power; and

   c.   Defects, liens, encumbrances, adverse claims, or other matters (a) known, created, suffered, assumed or agreed to by the guaranteed claimant; (b) resulting in no loss or damage to the guaranteed claimant; (c) attaching or created subsequent to Date hereof; or (d) resulting in loss or damage which would not have been sustained if the guaranteed claimant had paid value for the estate or interest guaranteed by this title guarantee.[5]

54.     The same day, Lorrae Russell, a Realty Specialist for Defendants, notarized Defendants' Acceptance of Conveyance of the Grant Deed dated January 16, 2017 and January 17, 2017. The Sacramento County Recorder recorded the January 16/17 Grant Deed and Defendants' Conveyance of Acceptance that afternoon.

55.     At close of business the same day, Defendants sent Plaintiffs through counsel a letter from Mr. Black, who signed as Acting Assistant Secretary, denying Plaintiffs' § 705

---

[5] Exhibit 2.

request. The email also stated that Defendants were denying Plaintiffs' January 26 meeting request. At the time Plaintiffs received notice of Defendants' decisions, Defendants had formally accepted title to the Elk Grove Site and were in the process of recording their acceptance. There was no opportunity for Plaintiffs to renew their motion for emergency relief from this Court.

56.     On February 15, 2017, Plaintiffs contacted Defendants through counsel to request the authority pursuant to which title was acquired. Plaintiffs noted that the January 19, 2017 ROD was signed by the Principal Deputy Assistant Secretary and that agency regulations do not authorize a Principal Deputy Assistant Secretary to issue final trust decisions. Plaintiffs noted that Defendants cannot accept title to land in trust unless the trust decision is made by the Secretary or the Assistant Secretary-Indian Affairs. Defendants did not respond.

57.     Agency regulations require interested parties to exhaust their administrative remedies for non-final agency decisions. Having received no explanation from Defendants regarding the authority for their actions, Plaintiffs filed a Notice of Appeal, a Petition for Preliminary Relief, and a Statement of Reasons with the Interior Board of Indian Appeals ("Board") on February 21, 2017.

58.     On February 24, 2017, the Board issued a Pre-Docketing Notice and Order for Briefing on Jurisdiction, ordering the BIA and other interested parties to brief, by March 17, 2017, whether the ROD was final for the Department, and therefore whether the Board had jurisdiction over the appeal.

59.     On March 7, 2017, Michael S. Black, signing as "Acting Assistant Secretary— Indian Affairs," advised the Board that he was assuming jurisdiction over the appeal pursuant to 25 C.F.R. § 2.20(c) and 43 C.F.R. § 4.332(b)—the regulations that govern administrative

appeals. The Board vacated the briefing order on March 8 and transferred the appeal to Mr. Black.

60.     On March 15, 2017, Plaintiffs filed an Objection to Mr. Black's Assumption of Jurisdiction and Request for Reconsideration, based on the FVRA, which the Board provided to Mr. Black on March 17, 2017.

61.     On March 30, 2017, Plaintiffs submitted a request to the Secretary, asking that he review: (1) the January 19, 2017, ROD; (2) the February 10, 2017, action to acquire the Elk Grove Site in trust; and (3) the March 17, 2017, assumption of jurisdiction over Plaintiffs' administrative appeal. The Secretary did not respond to Plaintiffs' request. Mr. Black did not issue a briefing schedule, as provided for in 25 C.F.R. § 2.20(e). Mr. Black also did not issue a decision "within 60 days after all time for pleadings (including all extensions) has expired." *Id*.

62.     On July 13, 2017, Mr. Black, signing as "Acting Assistant Secretary—Indian Affairs," issued an Order Dismissing Administrative Appeal, on the grounds that the January 19, 2017, ROD was final for the Department. Mr. Black's decision document stated that he was authorized to issue his decision pursuant to authority delegated to him in Secretarial Order 3345 and through other delegations of authority contained in the Departmental Manual.

63.     Defendants' actions have deprived Plaintiffs of their procedural rights under a variety of statutes and directly impact the community in which Plaintiffs reside and the interests Stand Up protects. The acquisition of land in trust for a casino will result in traffic, noise, light, crime, problem gambling, and other impacts, substantially altering the Elk Grove community. These decisions injure Plaintiffs' procedural, economic, environmental, and aesthetic interests.

## COUNT I

**(Declaratory and Injunctive Relief—Acquisition of Trust Land in Violation of the FVRA, Departmental Regulations, and the APA)**

64.     Each of the foregoing allegations is incorporated herein by reference.

65.     Pursuant to 25 C.F.R. § 151.12, the only officials authorized to take action on a trust request are: (1) the Secretary of the Interior; (2) the Assistant Secretary-Indian Affairs, pursuant to delegated authority; and (3) Bureau of Indian Affairs officials, pursuant to delegated authority. Only decisions made by the Secretary and the Assistant Secretary-Indian Affairs are final for the Department. 25 C.F.R. § 151.12(c). Decisions made by BIA officials pursuant to delegated authority are not final for the Department. 25 C.F.R. § 151.12(d).

66.     Any party who wishes to seek judicial review of a trust decision by a BIA official must first exhaust administrative remedies under 25 C.F.R. Part 2. 25 C.F.R. § 151.12(d)(4). Title to land cannot be taken into trust until after the time for filing a notice of appeal has expired or upon exhaustion of administrative remedies under 25 C.F.R. Part 2, at which point the decision becomes final. 25 C.F.R. § 151.12(d), (d)(2)(iv).

67.     The FVRA limits who may be appointed on a temporary basis to serve in the role of a political appointee subject to Senate confirmation, who may automatically serve, and for how long they may serve. 5 U.S.C. §§ 3345-3349d. If an officer of an Executive agency whose appointment must be made by the President, with the advice and consent of the Senate, resigns, the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity for no more than 210 days. 5 U.S.C. §§ 3345(a)(1), 3346(a)(1).

68.     Pursuant to the FVRA, Mr. Roberts automatically became the Acting Assistant Secretary-Indian Affairs on or about January 1, 2016. *See* 5 U.S.C. § 3345(a)(1). Pursuant to 5

U.S.C. § 3346(a)(2), Mr. Roberts ceased serving as the Acting Assistant Secretary-Indian Affairs on or about July 29, 2016.

69.     On January 19, 2017, Mr. Roberts was not: (1) the Secretary; (2) the Assistant Secretary, acting pursuant to delegated authority; or (3) a BIA official, acting pursuant to delegated authority. Agency regulations do not authorize Mr. Roberts, as Principal Deputy Assistant Secretary, to take action on a trust request. Mr. Roberts was statutorily prohibited from "perform[ing] the functions and duties" of the Office of the Assistant Secretary-Indian Affairs after July 29, 2016, for any function or duty required by statute or regulation to be performed personally by the Assistant Secretary-Indian Affairs.

70.     The ROD Mr. Roberts issued on the evening of January 19, 2017 was ultra vires, in violation of agency regulations and the FVRA.

71.     The acquisition of title to the Elk Grove Site on February 10, 2017, was ultra vires and in violation of agency regulations.

72.     Any action taken by an officer or employee of an agency in violation of this requirement is without "force or effect" and may not be ratified later by an authorized official. 5 U.S.C. § 3348(d).

73.     The Defendants' actions, findings, and conclusions in issuing the ROD and taking the land into trust were arbitrary, capricious, an abuse of discretion, or otherwise were not in accordance with law, or were without observance of the procedure required by law, and thus were unlawful under the APA. 5 U.S.C. § 706.

## COUNT II

### (Declaratory and Injunctive Relief—Acquisition of Trust Land in Violation of Departmental Regulations, the FVRA, and the APA)

74.     Each of the foregoing allegations is incorporated herein by reference.

75.     Under the FVRA, "the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity." 5 U.S.C. § 3348(a)(2).

76.     If the position of an officer of an Executive agency is vacant, only the head of an Executive agency may perform any function or duty that is required by a statute or regulation to be performed by the political appointee personally. 5 U.S.C. § 3348(b), (c).

77.     Any action taken by an officer or employee of an agency in violation of this requirement is without "force or effect" and may not be ratified later by an authorized official. 5 U.S.C. § 3348(d).

78.     Pursuant to 25 C.F.R. § 151.12(c)(2), "[i]f the Secretary or Assistant Secretary approves the request, the Assistant Secretary shall immediately acquire the land in trust under § 151.14 on or after the date such decision is issued and upon fulfillment of the requirements of § 151.13 and any other Departmental requirements." If a BIA official with delegated authority approves a trust request, "the official shall immediately acquire the land in trust under § 151.14 upon expiration of the time for filing a notice of appeal or upon exhaustion of administrative remedies under [25 C.F.R. Part 2.]" 25 C.F.R. § 151.12(d)(2)(iv).

79.     Pursuant to 25 C.F.R. § 2.4, the following officials may decide appeals: an area director, certain officials within the Bureau of Indian Education if from an Office of Indian Education Programs, the Assistant Secretary-Indian Affairs, a Deputy to the Assistant Secretary - Indian Affairs pursuant to the provisions of § 2.20(c), and the Interior Board of Indian Appeals.

80.     The Office of the Assistant Secretary-Indian Affairs has been vacant since July 29, 2016. Mr. Black is the Special Assistant to the Director, BIA and has served in that role since November 2, 2016. Mr. Black has purported to act as Acting Assistant Secretary-Indian Affairs since January 20, 2017.

81.     The President has not directed Mr. Black to perform the functions and duties of the vacant office temporarily in an acting capacity.

82.     Accordingly, Mr. Black acted without authority when he directed agency officials to acquire title to land in trust on February 10, 2017, assumed jurisdiction of Plaintiffs' appeal before the Interior Board of Indian Appeals on March 7, 2017, and dismissed Plaintiffs' appeal on July 13, 2017, in violation of the FVRA, agency regulations, and the APA. His actions are without "force or effect" and cannot be ratified. 5 U.S.C. § 3348(d)(2).

83.     The Defendants' actions, findings, and conclusions in issuing the ROD and taking the land into trust were arbitrary, capricious, an abuse of discretion, or otherwise were not in accordance with law, or were without observance of the procedure required by law, and thus were unlawful under the APA. 5 U.S.C. §§ 706.

## COUNT III

**(Declaratory and Injunctive Relief—Acquisition of Trust Land in Violation of the IRA, the California Rancheria Termination Act, and the APA)**

84.     Each of the foregoing allegations is incorporated herein by reference.

85.     The regulations implementing the IRA require the Secretary to consider the existence of his statutory authority and any limitations contained in such authority for the acquisition of trust land. 25 C.F.R. § 151.10.

86.     The IRA authorizes the Secretary to acquire land and hold it in trust "for the purpose of providing land for Indians." 25 U.S.C. § 5108. The Secretary's authority under the

IRA is limited to federally recognized tribes that were under federal jurisdiction as of June 18, 1934, when the IRA was enacted. *Carcieri*, 555 U.S. 379; 25 U.S.C. § 5129.

87.     The Wilton Rancheria is not a "recognized Indian tribe now under Federal jurisdiction" within the meaning of 25 U.S.C. § 5129 because the Rancheria was set aside for homeless Indians, not a recognized Indian tribe, and there is no established connection between the Indians living on the Rancheria in 1934 and members of the Wilton Rancheria today.

88.     The California Rancheria Termination Act of 1958 provides for the "termination of the Federal trust relationship" with the Wilton Rancheria, and directs that "[a]fter the assets of a rancheria or reservation have been distributed pursuant to this Act, the Indians who receive any part of such assets, and the dependent members of their immediate families, shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians, all statutes of the United States which affect Indians because of their status as Indians shall be inapplicable to them." P.L. 85-671 (72 Stat. 619).

89.     Because the assets of the Wilton Rancheria were distributed to the individuals living on the Rancheria at termination, federal law prohibits the Secretary from providing any services to them because of their status as Indians and the IRA. The authority under which the Principal Deputy Assistant Secretary purported to act, is inapplicable to them.

90.     Accordingly, neither the Secretary nor his delegates had the authority to acquire land in trust for the Wilton Rancheria under any federal statute.

91.     The actions, findings, and conclusions of the Defendants were arbitrary, capricious, an abuse of discretion, or otherwise were not in accordance with law, or were without observance of the procedure required by law, and thus were unlawful under the APA. 5 U.S.C. §§ 706(2)(A), (D).

## COUNT IV

**(Declaratory and Injunctive Relief—Acquisition of Land for Gaming in Violation of the IRA, IGRA, and the APA)**

92.     Each of the foregoing allegations is incorporated herein by reference.

93.     The regulations implementing the IRA require the Secretary to consider the purposes for which the land will be used, the jurisdictional problems and potential conflicts of land use which may arise, a plan specifying the anticipated economic benefits associated with the proposed use, and other factors. 25 C.F.R. Part 151.

94.     Lands to be used for gaming must qualify as "Indian lands" under IGRA. 25 U.S.C. § 2710. For lands to qualify as "Indian lands," a tribe must exercise governmental power over the land. 25 U.S.C. § 2703(4).

95.     The Elk Grove Site is subject to a number of encumbrances or restrictive covenants that run with the land. Those encumbrances or restrictive covenants include various City laws, ordinances and governmental regulations (including but not limited to building and zoning ordinances) that restrict and regulate or prohibit the occupancy, use or enjoyment of the land, and regulate the character, dimensions and location of any improvement now or hereafter erected on the land, and prohibit a separation in ownership and a reduction in the dimensions or area of the land, or environmental protection, or the effect of any violation of any such law, ordinance or governmental regulation and rights of eminent domain and governmental rights of police power.

96.     These encumbrances prevent the Elk Grove Site from qualifying as "Indian lands." In addition, IGRA prohibits gaming on lands acquired in trust after 1988, unless the tribe involved qualifies as a "restored tribe" and the lands to be acquired in trust qualify as "restored lands." 25 U.S.C. § 2719(b)(1)(B)(iii), 25 C.F.R. § 292.7.

97.     The Indians living on the Rancheria did not constitute a sovereign historical entity and were not formally recognized as a Tribe prior to or during 1934.

98.     The Wilton Rancheria is not a restored tribe for purposes of the restored lands exception.  25 U.S.C. § 2719(b)(1)(B)(iii), 25 C.F.R. § 292.7.

99.     The California Rancheria Termination Act states that all statutes of the United States which affect Indians because of their status as Indians shall be inapplicable to them—a prohibition that includes IGRA.

100.    Nor can the Elk Grove Site qualify as restored land for purposes of the restored lands exception. 25 U.S.C. § 2719(b)(1)(B)(iii), 25 C.F.R. § 292.7.

101.    Defendants' determinations that the Elk Grove Site can be used for gaming without jurisdictional conflict, that it qualifies as "Indian lands," and for the restored lands and restored tribe exception are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, unwarranted by the facts, and exceeds the Secretary's statutory authority in violation of the APA. 5 U.S.C. §§ 702, 704, 706.

## COUNT V

### (Declaratory and Injunctive Relief—Acquisition of Land for Gaming in Violation of the NEPA and the APA)

102.    Each of the foregoing allegations is incorporated herein by reference.

103.    The actions by the Secretary, Interior, and BIA in certifying the EIS and issuing the ROD were in violation of NEPA, 42 U.S.C. §§ 4321 *et seq.* and its implementing regulations, 40 C.F.R. §§ 1500 *et seq.* Without limitation, Defendants' actions violate NEPA and are therefore unlawful in the respects alleged below.

      a.  Defendants failed to supplement the EIS prior to issuance of the ROD after changing the proposed action from a 282-acre site in Galt, California to a 36-acre site in Elk Grove California, after significant new circumstances and new information arose that directly affects environmental concerns, and after failing

to provide a sufficient and equivalent public participation opportunity for the Elk Grove residents;

b.   Defendants impermissibly adopted an alternative that was not considered in the draft EIS and failed to supplement the EIS despite changes to the Elk Grove Site alternative that are relevant to environmental concerns, after significant new circumstances and new information arose that directly affects environmental concerns, and after failing to provide a sufficient and equivalent public participation opportunity for the Elk Grove residents;

c.   The Defendants failed to adequately address the encumbrances on the Casino Site, which the final EIS ignored and the ROD dismisses without adequate analysis;

d.   Defendants failed to consider new information;

e.   Defendants failed to obtain, consider, evaluate, and analyze sufficient, relevant, and updated information and public comments before issuing a final EIS that makes conclusions about the proposed Casino Project;

f.   Defendants failed to consider fully all of the cumulative impacts of the Casino Project on the community of Elk Grove and its members; and

g.   Defendants failed to provide adequate public notice and opportunity for public review and comment of the alternative selected.

104.   The actions, findings, and conclusions of the Defendants were arbitrary, capricious, an abuse of discretion, or otherwise were not in accordance with law, or were without observance of the procedure required by law, and thus were unlawful under the APA.  5 U.S.C. §§ 706(2)(A), (D).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment as follows:

a.   Declaring that Defendants acted in an arbitrary and capricious manner by issuing the final EIS and approving the Wilton Rancheria's trust application because the final EIS is legally inadequate under NEPA and the APA and ordering the Secretary to comply with NEPA by preparing a new or supplemental EIS consistent with NEPA's requirements;

b. Invalidating, annulling and declaring illegal the ROD and ordering the Defendants to set aside and vacate the ROD and enjoin its implementation;

c. Declaring that Defendants actions in issuing the ROD to be arbitrary and capricious, to constitute an abuse of discretion, to be in excess of the Secretary's authority, ultra vires, and otherwise not in accordance with law;

d. Declaring that Mr. Black did not have the authority under the IRA or IGRA to take land into trust for the Wilton Rancheria;

e. Declaring Defendants' actions in taking the subject lands into trust to be arbitrary and capricious, to constitute an abuse of discretion, to be in excess of the Secretary's authority, ultra vires, and otherwise not in accordance with law;

f. A declaratory judgment affirmatively unwinding all of the steps taken by the Defendants to change the status of the lands in Elk Grove, including requiring the Defendants to return the declared trust land to its non-trust, fee title status prior to the issuance of the ROD; to rescind the Defendants' "restored lands" and "restored tribe" determination under IGRA, and to otherwise rescind all determinations and directives in the ROD respecting both how title to the land is held and what uses the land may be put to under IGRA;

g. A declaratory judgment that the lands in Elk Grove are subject to state and local taxation and regulation just as they were prior to the issuance of the ROD;

h. Pending the final determination of this matter on the merits, the Court grant all necessary temporary, preliminary, or interim relief to preserve the status quo, including a preliminary injunction barring the Defendants from taking any actions on

the basis that the Casino Site has the legal status of trust land, pending resolution of this suit; and

i.   Grant Plaintiffs any and all other, further, and additional relief as the Court may deem just and proper, including all necessary and appropriate declarations of rights and injunctive relief.

Dated this 10th of August, 2017                    Respectfully submitted,

**PERKINS COIE LLP**

By:  _s/ Jennifer A. MacLean_
       Jennifer A. MacLean, Bar No. 1013448
       JMacLean@perkinscoie.com
       Benjamin S. Sharp, Bar No. 211623
       BSharp@perkinscoie.com
       700 Thirteenth Street, N.W., Suite 600
       Washington, D.C. 20005-3960
       Telephone: 202.654.6200
       Facsimile: 202.654.6211

       *Attorneys for Plaintiffs*
       *Joe Teixeira*
       *Patty Johnson*
       *Lynn Wheat*
       *Stand Up for California!*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2017, I electronically filed the foregoing with the Clerk of the

Court using the ECF System which will send notification of such filing to the registered

participants as identified on the Notice of Electronic Filing.  I further certify that Defendants and

Intervenor-Defendant have been served the foregoing document by certified U.S. mail.


*/s/ Jennifer A. MacLean*