# Exhibit 2



Order No.: P-196360
Guarantee No.: CTG-3-CA1000-4904403

# WESTCOR LAND TITLE INSURANCE COMPANY

# CHAIN OF TITLE GUARANTEE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND THE OTHER PROVISIONS OF THE GUARANTEE CONDITIONS AND STIPULATIONS HEREOF, WESTCOR LAND TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION, HEREIN CALLED THE COMPANY,

### GUARANTEES

the Assured named in Schedule A of this Guarantee,

against actual monetary loss or damage not exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurances set forth in Schedule A.

### SCHEDULE A
### IS ATTACHED HERETO AS A SEPARATE PAGE AND MADE A
### PART OF THIS GUARANTEE

IN WITNESS WHEREOF, WESTCOR LAND TITLE INSURANCE COMPANY has caused this Guarantee to be signed and sealed as of the Date of Guarantee shown in Schedule A.

**Note: This Guarantee is of no force and effect unless Schedule A is attached together with any added pages incorporated by reference.**

**Issued By:**
Placer Title Company
5828 Lonetree Blvd., Suite 200
Rocklin, CA  95765
Agent ID:   CA1001

*[Authorized Countersignature: John Tyler]*

**WESTCOR LAND TITLE INSURANCE COMPANY**

By: *Mary O'Donnell*, President
Attest: *Patricia W. Power*, Secretary

CTG-3 Chain of Title Guarantee (CLTA Form No. 6) (6-6-92)

# SCHEDULE A
# Chain of Title Guarantee

| | | | |
|---|---|---|---|
| Order No.: | P-196360 | | |
| Guarantee No.: | CTG-3-CA1000-4904403 | | |
| Liability: | $1,000.00 | State: | California |
| Premium: | $400.00 | County: | Sacramento |

1. Name of Assured:

   Boyd Gaming Corp.

2. Date of Guarantee:    February 10, 2017 at 8:00AM

The assurances referred to on the face page are:

That, according to those public records which, under the recording laws, impart constructive notice of matters relating to the interest, if any, which was acquired by Boyd Gaming Corporation, a Nevada corporation pursuant to a Grant Deed, recorded January 19, 2017, as (book) 20170119 (page) 0810, Official Records. in and to the land described as follows:

   **SEE EXHIBIT "A" ATTACHED FOR LEGAL DESCRIPTION**

Only the following matters appear in such records subsequent to January 1, 2000:

   **SEE EXHIBIT "B" ATTACHED FOR EXCEPTIONS**

This Guarantee does not cover:

   1. Taxes, assessments and matters related thereto.
   2. Instruments, proceedings, or other matters which no not specifically describe said land.

CTG-3 Chain of Title Guarantee (CLTA Form No. 6) (6-6-92)

Order No.:  P-196360
Guarantee No.:  CTG-3-CA1000-4904403

# EXHIBIT "A"
# LEGAL DESCRIPTION

All that certain real property situated in the City of Elk Grove, County of Sacramento, State of California, and is described as follows:

Tract One :

All of Lot A as depicted on that certain map entitled "Subdivision No. 00-038.00 Lent Ranch Marketplace", filed for record on December 14, 2007 in Book 372 of Maps, Page 27, Sacramento County Records.

Together with a portion of Abandoned West Stockton Boulevard per Book 20081110, Page 381, Official Records of the County of Sacramento and more particular described as follows:

Beginning at the easterly terminus in the curved northerly boundary of said Lot A, being a curve concave to the south having a radius of 400.00 feet, a radial line of said curve to said terminus bears North 24° 22' 51" East; thence from said point of beginning, North 52° 04' 42" East, a distance of 46.00 feet;

Thence South 37° 55' 18" East, a distance of 736.17 feet;

Thence South 33° 02' 59" East, a distance of 541.63 feet to the easterly line of said Lot A;

Thence coincidental with said easterly line, North 37° 55' 18" West, a distance of 1,275.84 feet to the point of beginning.

Containing 100.34 acres of land net, more or less.

Tract Two:

Being a portion of Lot A, as shown on that certain map entitled "Subdivision No. 00-038.00 Lent Ranch Marketplace" filed for record on December 14, 2007, in Book 372 of Maps, Page 27, located in the City of Elk Grove, County of Sacramento, State of California, more particularly described as follows:

Commencing at a point which is the northeasterly corner of Lot A of said map, being a 3/4" iron pipe with plug stamped L.S.6815; thence leaving said point of commencement along the northeasterly line of said Lot A, South 37° 55' 18" East, a distance of 533.10 feet; thence leaving said northeasterly line, entering and passing through said Lot A, South 51° 30' 01" West, a distance of 24.29 feet to the true point of beginning. thence leaving said point of beginning and continuing through said Lot A, South 51º 30' 01" West, a distance of 1,780.56 feet to a point on the southwesterly line of said Lot A, also being a point on the northeasterly right-of-way line of Promenade Parkway as shown on said map; thence northwesterly and northerly, respectively, along said right-of-way line, the following twenty-one (21) arcs, courses and distances:

1) From a radial line which bears South 57° 17' 37" West, along a non-tangent curve concave to the east, having a radius of 1,452.00 feet, northwesterly 564.43 feet along said curve through a central angle of 22° 16' 20";

2) North 79° 33' 57" East, a distance of 6.00 feet;

3) From a radial line which bears South 79° 33' 57" West, along a non-tangent curve concave to the southeast, having a radius of 25.00 feet, northeasterly 40.55 feet along said curve through a central angle of 92° 56' 41";

CTG-3 Chain of Title Guarantee (CLTA Form No. 6) (6-6-92)

4) North 82° 30' 38" East, a distance of 51.72 feet;

5) North 07° 29' 22" West, a distance of 100.00 feet;

6) South 82° 30' 38" West, a distance of 53.51 feet;

7) Along a tangent curve concave to the northeast, having a radius of 25.00 feet, northwesterly 40.62 feet along said curve through a central angle of 93° 06' 07";

8) South 85° 36' 45" West, a distance of 6.00 feet;

9) From a radial line which bears South 85° 36' 45" West, along a non-tangent curve concave to the east, having a radius of 1,454.00 feet, northerly 93.58 feet along said curve through a central angle of 03° 41' 16";

10) North 00° 42' 00" West, a distance of 147.80 feet;

11) North 89° 18' 00" East, a distance of 6.00 feet;

12) From a radial line which bears South 89°18' 00" West, along a non-tangent curve concave to the southeast, having a radius of 25.00 feet, northeasterly 39.27 feet along said curve through a central angle of 90° 00' 00";

13) North 89° 18' 00" East, a distance of 6.00 feet; .

14) North 00° 42' 00" West, a distance of 50.00 feet;

15) South 89° 18' 00" West, a distance of 13.34 feet;

16) Along a tangent curve concave to the northeast, having a radius of 25.00 feet, northwesterly 38.46 feet along said curve through a central angle of 88° 08' 33";

17) South 87° 26' 33" West, a distance of 6.00 feet;

18) North 02° 33' 27" West, a distance of 51.58 feet;

19) North 00° 42' 00" West, a distance of 563.84 feet;

20) North 89° 18' 00" East, a distance of 6.00 feet;

21) From a radial line which bears South 89°18' 00" West, along a non-tangent curve concave to the east, having a radius of 25.00 feet, northerly 6.76 feet along said curve through a central angle of 15° 30' 00" to the northwest corner of said Lot A and a point on the common line between said Lot A and Lot G of said Map; thence leaving said northeasterly line, along said common line, the following four (4) arcs, courses and distances:

1) North 89° 12' 25" East, a distance of 86.70 feet;

2) Along a tangent curve concave to the southwest, having a radius of 330.00 feet, southeasterly 314.08 feet along said curve through a central angle of 54° 31' 51";

3) South 36° 15' 44" East, a distance of 86.17 feet;

CTG-3 Chain of Title Guarantee (CLTA Form No. 6) (6-6-92)

Order No.: P-196360
Guarantee No.: CTG-3-CA1000-4904403

4) Along a tangent curve concave to the north, having a radius of 25.00 feet, easterly 37.96 feet along said curve through a central angle of 87° 00' 21";

thence leaving said common line, entering and passing through said Lot A, the following eight (8) arcs, courses and distances:

1) South 32° 02' 06" East a distance of 66.91 feet;

2) From a radial line which bears North 33° 08' 11" West, along a non-tangent curve concave to the south, having a radius of 978.00 feet, easterly 417.51 feet along said curve through a central angle of 24º 27' 35";

3) North 81° 19' 25" East, a distance of 19.83 feet;

4) Along a tangent curve concave to the south, having a radius of 879.00 feet, easterly 342.73 feet along said curve through a central angle of 22° 20' 25";

5) South 76° 20' 11" East, a distance of 12.19 feet;

6) Along a tangent curve concave to the southwest, having a radius of 342.00 feet, southeasterly 157.69 feet along said curve through a central angle of 26° 25' 03";

7) Along a compound curve concave to the southwest, having a radius of 342.00 feet, southeasterly 71.04 feet along said curve through a central angle of 11° 54' 08";

8) South 38° 01' 00" East, a distance of 346.19 feet to the point of beginning.

Containing 35.92 acres, more or less.

APN: 134-1010-001-0000 (old) 134-1111-010-0000 (new)

Order No.: P-196360
Guarantee No.: CTG-3-CA1000-4904403

# EXHIBIT "B"
# EXCEPTIONS:

Grant Deed from Marilyn J. Wackman, Trustee of The Marilyn J. Wackman Revocable Trust, under Declaration of Trust, established October 6, 1994, to M & H Realty Partnership, L. P., a California limited partnership, recorded January 3, 2002, (book) 20020103 (page) 0207, Official Records.

Grant Deed from Robert H. Lent, a married man as his sole and separate property, who acquired title as Robert J. Lent, a married man as his sole and separate property, to Robert H. Lent and Lisa Lent, husband and wife as joint tenants, recorded February 13, 2002, (book) 20020213 (page) 2665, Official Records.

Grant Deed from M & H Partners III, L.P., a California limited partnership, to M & H Realty Partners Affiliated Fund III L.P., a California limited partnership, recorded July 1, 2002, (book) 20020701 (page) 0370, Official Records.

Grant Deed from M & H Realty Partners Affiliated Fund III, L.P. a California limited partnership, to Elk Grove Town Center, L.P.m a Delaware limited partnership, recorded November 19, 2003, (book) 20031119 (page) 2201, Official Records.

Quitclaim Deed from Susan L. Rasmussen, to Robert H. Lent, individually and Robert H. Lent, as General Trustee of the Brian Wayne Lent Trust, recorded November 15, 2004, (book) 20041115 (page) 1922, Official Records.

Quitclaim Deed from Robert H. Lent, individually and Robert H. Lent, as General Trustee of the Brian Wayne Lent Trust, to Susan L. Rasmussen, recorded November 15, 2004, (book) 20041115 (page) 1923, Official Records.

Grant Deed from Susan L. Rasmussen, an unmarried woman, to Marvin L. Oates, Trustee of The Marvin L. oats Trust, dated March 7, 1995 as to an undivided 75% interest,and OBF , a California General Partnership as to an undivided 25% interest, recorded February 25, 2005, (book) 20050225 (page) 2309, Official Records.

Grant Deed from Robert H. Lent and Lisa Lent, husband and wife as joint tenants, to Robert H. Lent and Lisa K. Lent, husband and wife as joint tenants, recorded April 21, 2005, (book) 20050421 (page) 2314, Official Records.

Grant Deed from Marvin L. Oates, Trustee of the Marvin L. Oates Trust, dated March 7, 1995, and OBF, a California general partnership, to Feletto Development, LLC, a California limited liability company, recorded March 1, 2006, (book) 20060301 (page) 1311, Official Records.

Final Order of Condemnation from City of Elk Grove, plaintiff, to Elk Grove Town Center, L.P. et al, recorded September 10, 2008, (book) 20080910 (page) 0449, Official Records.

Quitclaim Deed from City of Elk Grove, a municipal corporation, to M & H Realty Partners, Affiliated Fund III, L.P., a California Limited Partnership, recorded November 10, 2008, (book) 20081110 (page) 0382, Official Records.

Final Order of Condemnation from City of Elk Grove, Plaintiff, to M & H Realty Partners Affiliated Fund III, et al., recorded December 30, 2008, (book) 20081230 (page) 0520, Official Records.

Order No.: P-196360
Guarantee No.: CTG-3-CA1000-4904403

Quitclaim Deed from City of Elk Grove, a municipal corporation, to Elk Grove Town Center, L.P., a Delaware corporation, recorded March 12, 2009,  (book) 20090312 (page) 0947, Official Records.

Interspousal Transfer Deed from Lisa K. Lent, to Robert H. Lent, as his sole and separate property, recorded September 23, 2009,  (book) 20090923 (page) 0641, Official Records.

Trust Transfer Deed from Robert H. Lent, as his sole and separate property, to Robert H. Lent, Trustee of The Robert H. Lent Trust, dated March 13, 2009, recorded October 20, 2009,  (book) 20091020 (page) 0964, Official Records.

Memorandum of Option Agreement from Elk Grove Town Center, L.P., Optionor, to Boyd Gaming Corporation and the Wilton Rancheria, Optionee, recorded June 7, 2016,  (book) 20160607 (page) 0686, Official Records.

Grant Deed from Elk Grove Town Center, L.P., a Delaware Limited Partnership, to Elk Grove Town Center, L.P., a Delaware Limited Partnership, recorded January 9, 2017,  (book) 20170109 (page) 1363, Official Records.

Grant Deed from Elk Grove Town Center, L.P. a Delaware limited partnership, to Boyd Gaming Corporation, a Nevada corporation and Wilton Rancheria, a federally recognized tribe, recorded January 19, 2017,  (book) 20170119 (page) 0810, Official Records.

Grant Deed from Boyd Gaming, a Nevada Corporation and the Wilton Rancheria California, a federally recognized tribe, to The United States of America in Trust for the Wilton Rancheria, California, recorded February 10, 2017,  (book) 20170210 (page) 1080, Official Records.

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this guarantee:

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or environmental protection, or the effect of any violation of any such law, ordinance or governmental regulation, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Guarantee.
2. Rights of eminent domain or governmental rights of police power.
3. Defects, liens, encumbrances, adverse claims, or other matters (a) known, created, suffered, assumed or agreed to by the guaranteed claimant; (b) resulting in no loss or damage to the guaranteed claimant; (c) attaching or created subsequent to Date hereof; or (d) resulting in loss or damage which would not have been sustained if the guaranteed claimant had paid value for the estate or interest guaranteed by this title guarantee.

## GUARANTEE CONDITIONS AND STIPULATIONS
### (To the extent terms included herein are applicable to this Guarantee)

1. This Guarantee is a guarantee of the record title only, as disclosed by an examination of the public records herein defined in the chain of title ownership.
2. The Company assumes no liability under this guarantee for any loss, cost or damage resulting from any physical condition of the land described herein.
3. In case knowledge shall come to the party guaranteed of any lien, encumbrance, defect or other claim of title guaranteed against and not excepted in this Guarantee, whether in a legal proceeding or otherwise, the party guaranteed shall notify the Company promptly in writing and secure to it the right to oppose such proceeding or claim, or to remove said lien, encumbrance or defect, at its own cost. Any action for the payment of any loss under this Guarantee must be commenced within one year after such loss or damage and to commence such action within the time hereinbefore specified shall be a conclusive bar against the maintenance of any action under this guarantee.
4. The Liability of the Company shall in no case exceed in all the amount stated in Schedule A hereof and shall in all cases be limited to the actual loss only of the party guaranteed, and all payments under this guarantee shall reduce the amount of this guarantee pro tanto. Any payments made by the Company under this Guarantee shall subrogate the Company to the rights of the party guaranteed for liability voluntarily assumed by the party guaranteed in settling any claim without the prior written consent of the Company.
5. This guarantee together with endorsements, if any, attached hereto by the Company is the entire contract between the guaranteed and the Company.
Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest guaranteed hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this guarantee. No amendment or endorsement to this guarantee can be made except by writing endorsed hereon or attached hereto signed by either (the person or persons authorized by the requirements of the Company using this form).
6. Definition of Terms The following terms when used in this guarantee mean:
(a) "Guarantee": the party or parties named in Schedule A as guaranteed.
(b) "Guarantee claimant": A guaranteed claiming loss or damage hereunder.
(c) "Land": The land described, specifically or by reference in Schedule A, and improvements affixed thereto which by law constitutes real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, lanes, ways or waterways.
(d) "Public Records": Records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.(e) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument.
7. All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at: Westcor Land Title Insurance Company, Attn: Claims,875 Concourse Parkway South, Suite 200.

CTG-3 Chain of Title Guarantee (CLTA Form No. 6) (6-6-92)

**PRIVACY POLICY NOTICE**

# Purpose Of This Notice

Title V of the Gramm-Leach-Bailey Act (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution provides you with a notice of is privacy policies and practices, such as the type of information that it collects about you and the categories of a persons or entities to whom it may be disclosed. In compliance with the GLBA, we are providing you with this document which notifies you of the privacy policies and practices of:

| | |
|---|---|
| Montana Title and Escrow Company | Placer Title Company |
| National Closing Solutions, Inc. | Placer Title Insurance Agency of Utah |
| National Closing Solutions of Alabama, LLC | National Closing Solutions of Arkansas, LLC |
| National Closing Solutions of Maryland, Inc. | North Idaho Title Insurance Company |
| Texas National Title | Wyoming Title and Escrow Company |

We may collect nonpublic personal information about you from the following sources:

- Information we receive from you, such as an application or other forms.
- Information about your transactions we secure from our files, or from our affiliates or others.
- Information we receive from a consumer reporting agency.
- Information we receive from others involved in your transaction, such as the real estate agent or lender.

Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to nonaffiliated third parties as permitted by law.

We also may disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:

- Financial service providers such as companies engaged in banking, consumer finances, securities and insurance.
- Nonfinancial companies such as envelope stuffers and other fulfillment service providers.

**We do not disclose any nonpublic personal information about you with anyone for any purpose that is not specifically permitted by law.**

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you.  We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

# PRIVACY POLICY
## Westcor Land Title Insurance Company

Westcor Land Title Insurance Company ("WLTIC") values its customers and is committed to protecting the privacy of personal information. In keeping with that philosophy, we have developed a Privacy Policy, set out below, that will ensure the continued protection of your nonpublic personal information and inform you about the measures WLTIC takes to safeguard that information.

**Who is Covered**

Our Privacy Policy applies to each customer who purchases a WLTIC title insurance policy. Typically, this means that the customer covered by our Privacy Policy at the closing of the real estate transaction.

**Information Collected**

In the normal course of business and to provide the necessary services to our customers, we may obtain nonpublic personal information directly from the customer, from customer-related transactions, or from third parties such as our title insurance agents, lenders, appraisers, surveyors or other similar entities.

**Access to Information**

Access to all nonpublic personal information is limited to those employees who have a need to know in order to perform their jobs. These employees include, but are not limited to, those in departments such as legal, underwriting, claims administration and accounting.

**Information Sharing**

It is the policy of WLTIC not to share nonpublic personal information that it collects with anyone other than our policy issuing agents as necessary to complete the real estate settlement services and issue the title insurance policy requested by our customer. WLTIC may share nonpublic personal information as permitted by law with entities with whom WLTIC has a joint marketing agreement. Entities with whom WLTIC has a joint marketing agreement have agreed to protect the privacy of our customer's nonpublic personal information by utilizing similar precautions and security measures to those that WLTIC uses to protect this information and only to use the information for lawful purposes. WLTIC, however, may share information as required by law in response to a subpoena, to a government regulatory agency or to prevent fraud.

**Information Security**

WLTIC, at all times, strives to maintain the confidentiality and integrity of the personal information in its possession and has instituted measures to guard against its unauthorized access. We maintain physical, electronic and procedural safeguards in compliance with federal standards to protect that information.