## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STAND UP FOR CALIFORNIA!**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. DEP'T OF THE INTERIOR**, *et al.*,<br><br>Defendants,<br><br>**and**<br><br>**WILTON RANCHERIA,**<br><br>Intervenor Defendant. | Civil Action No. 1:17-cv-00058-RDM<br><br>Judge Randolph D. Moss<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs Stand Up for California!, Joe Teixeira, Patty Johnson, and Lynn Wheat (collectively, "Stand Up") move for summary judgment against Federal Defendants on Counts I and II of the Amended Complaint. *See* ECF No. 26. This motion challenges Defendants' January 19, 2017, Record of Decision (January 19th ROD) approving the Wilton Rancheria's request to have approximately 36 acres of land in Elk Grove, California acquired in trust for gaming. Stand Up alleges that Defendants violated 25 C.F.R. § 151.12(c) and the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d, and that the January 19th ROD and subsequent acquisition of title to the land in trust are arbitrary, capricious, contrary to law, and in excess of statutory authority under 5 U.S.C. § 706(2).

This motion raises issues of law only that can be resolved independently of the facts in the administrative record, and, if successful, will render the remaining counts set forth in the Amended Complaint moot. Stand Up accordingly requests the Court to enter judgment in accordance with the attached Proposed Order.

The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

Dated: October 1, 2017

By:   */s/ Jennifer A. MacLean*
    Jennifer A. MacLean, Bar No. 1013448
    Benjamin S. Sharp
    **PERKINS COIE LLP**
    700 Thirteenth Street, N.W., Suite 600
    Washington, D.C.  20005-3960
    Telephone:  (202) 654-6200
    Facsimile:  (202) 654-6211
    JMacLean@perkinscoie.com
    BSharp@perkinscoie.com

    Eric D. Miller
    Julie Wilson-McNerney
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Phone: (206) 359-8000
    Facsimile: (206) 359-9000
    EMiller@perkinscoie.com
    JWilsonMcNerney@perkinscoie.com

    Attorneys for Plaintiffs
    Joe Teixeira
    Patty Johnson
    Lynn Wheat
    Stand Up for California!

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STAND UP FOR CALIFORNIA!**, *et al.,* | |
| Plaintiffs, | Civil Action No. 1:17-cv-00058-RDM |
| **v.** | Judge Randolph D. Moss |
| **U.S. DEP'T OF THE INTERIOR,** *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants, | |
| **and** | |
| **WILTON RANCHERIA,** | |
| Intervenor Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    Legal Framework ................................................................................................. 2

           1.    The Indian Reorganization Act of 1934 and Implementing Regulations ......................................................................................... 2

           2.    The Appointments Clause and the Federal Vacancies Reform Act........... 3

    B.    The Present Dispute ............................................................................................ 4

           1.    The pre-January 19, 2017, proceedings ..................................................... 4

           2.    The January 19, 2017, Record of Decision signed by the Principal Deputy ........................................................................................................ 5

           3.    The post-February 10, 2017, proceedings before the Interior Board of Indian Appeals ...................................................................................... 6

           4.    The July 13, 2017 dismissal of Stand Up's appeal .................................... 8

ARGUMENT .......................................................................................................................... 9

    A.    The January 19th ROD and Defendants' subsequent acquisition of title violate Section 151.12(c) .......................................................................... 9

    B.    Defendants' post hoc justification underscores the illegality of the January 19th ROD and subsequent acquisition ................................................ 12

           1.    Defendants' construction of Section 151.12(c) is contrary to its plain text...................................................................................................... 12

           2.    Defendants' construction of Section 151.12(c) raises constitutional questions .................................................................................................... 14

           3.    The Department Manual delegations Defendants cite cannot override duly promulgated regulations ..................................................... 16

    C.    Because the power to issue final trust decisions is a function or duty of a PAS officer, the January 19th ROD and subsequent acquisition violated the Federal Vacancies Reform Act. .................................................... 17

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Auer* v. *Robbins*,
    519 U.S. 452 (1997) ............................................................................................................... 17

*Christensen* v. *Harris Cnty.*,
    529 U.S. 576 (2000) ............................................................................................................... 12

*City of Sherrill, N.Y.* v. *Oneida Indian Nation of N.Y.*,
    544 U.S. 197 (2005) ............................................................................................................... 15

*Crawford* v. *FCC*,
    417 F.3d 1289 (D.C. Cir. 2005) ....................................................................................... 9, 11

*DeCoteau* v. *District County Court for Tenth Judicial Dist.*,
    420 U.S. 425 (1975) ............................................................................................................... 15

*Dep't of Transp.* v. *Ass'n of Am. Railroads*,
    135 S. Ct. 1225 (2015) (Alito, J., concurring) ..................................................................... 15

*Edmond* v. *United States*,
    520 U.S. 651 (1997) ............................................................................................................... 15

*NLRB* v. *SW Gen., Inc.*,
    137 S. Ct. 929 (2017) ...................................................................................................... 13, 20

*Perez* v. *Mortgage Bankers Ass'n*,
    135 S. Ct. 1199 (2015) ........................................................................................................... 17

*Russello* v. *United States*,
    464 U.S. 16 (1983) ................................................................................................................. 14

*Schweiker* v. *Hansen*,
    450 U.S. 785 (1981) ............................................................................................................... 17

*Texas* v. *EPA*,
    726 F.3d 180 (D.C. Cir. 2013) ............................................................................................... 9

*TRW, Inc.* v. *Andrews*,
    534 U.S. 19 (2001) ................................................................................................................. 13

## TABLE OF AUTHORITIES
### (continued)

Page

**STATUTES**

5 U.S.C. § 704 .................................................................................................2, 8, 11

5 U.S.C. § 705 ................................................................................................5, 6, 16

5 U.S.C. § 706 ........................................................................................................9

5 U.S.C. §§ 3345-3349d (Federal Vacancies Reform Act of 1998) ..................... passim

25 U.S.C. § 5108 (Section 5, Indian Reorganization Act of 1934) ...................2, 10, 15

Pub.L. 92-22, § 3, 85 Stat. 76 ...............................................................................18

64 Stat. 1262, as amended June 1, 1971, Pub.L. 92-22, § 3, 85 Stat. 76 ....................18

**REGULATIONS**

25 C.F.R. Part 2 ...........................................................................................2, 7, 10, 15

25 C.F.R. Part 151 ..............................................................................................2, 12

25 C.F.R. § 1.4 ......................................................................................................15

25 C.F.R. § 2.6(b), (c) ......................................................................................14, 15

25 C.F.R. § 2.20(c) .....................................................................................11, 14, 16, 19

25 C.F.R. § 151.12 ............................................................................................ passim

40 C.F.R. § 1506.10(b)(2) .....................................................................................4, 5

45 Fed. Reg. 62,034 (Sept. 18, 1980) (codified at 25 C.F.R. Part 120a.2(a)) ..............12

54 Fed. Reg. 6478 (Feb. 10, 1989) .........................................................................19

60 Fed. Reg. 32,874 (June 23, 1995) .......................................................................12

78 Fed. Reg. 67,928 (Nov. 13, 2013)...............................................................2, 10, 18

78 Fed. Reg. 72,928-01 (Dec. 4, 2013).......................................................................4

80 Fed. Reg. 81,352 (Dec. 29, 2015) ..........................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

81 Fed. Reg. 90,379 (Dec. 14, 2016) ..............................................................................4

81 Fed. Reg. 91,169 (Dec. 16, 2016) ..............................................................................4

**OTHER AUTHORITIES**

U.S. Const. art. II, § 2, cl. 2 .....................................................................................3, 14

**INTRODUCTION**

In a 2013 rulemaking, the Secretary of the Interior (Secretary) attempted to create a clear and transparent process for implementing decisions to acquire land in trust for Indian tribes. Under the rule, only the Secretary or the Assistant Secretary–Indian Affairs (Assistant Secretary) are authorized to make trust decisions that are final for the Department, at which point the Assistant Secretary shall immediately acquire title to the land in trust. The same rule authorizes certain Bureau of Indian Affairs (BIA) officials to make trust decisions, but their decisions are not final until after administrative remedies are exhausted.

The 2013 rule can provide neither clarity nor transparency, however, if Defendants fail to follow it. On January 19, 2017, the Principal Deputy Assistant Secretary (Principal Deputy) made the trust decision challenged here, and Defendants acquired title soon thereafter. When asked about their authority to do so, Defendants took four months to determine that the Principal Deputy's trust decision was final in January and the subsequent acquisition was authorized. Defendants assert that, notwithstanding the limitations set out in the 2013 rule, they may freely delegate the authority to make final trust decisions to officials of their choosing.

Defendants are incorrect. The plain language of 25 C.F.R. § 151.12(c) unambiguously limits the authority to make final trust decisions to the Secretary or Assistant Secretary. Duly promulgated regulations have the force and effect of law, and Defendants cannot circumvent those limits by delegation. Defendants' construction is not only contrary to the plain language of the regulation, it raises constitutional concerns. The Appointments Clause of the U.S. Constitution does not permit inferior officers to exercise an authority under federal law as significant as deciding whether to immediately acquire title to land in trust for an Indian tribe. Only principal officers of the United States—those appointed by the President and confirmed by the Senate—can exercise such power.

Because 25 C.F.R. § 151.12(c) prohibits delegation, Defendants' January 19th decision also violated the Federal Vacancies Reform Act of 1998 (FVRA). The FVRA prohibits inferior officers from performing a function or duty reserved by statute or regulation to an office

requiring nomination with advice and consent. Yet Defendants have repeatedly performed duties and functions reserved by regulation to the Assistant Secretary—an office that has been vacant for over a year—in violation of the Act.

This Court should vacate the January 19th decision to acquire land in trust for the Wilton Rancheria as arbitrary and capricious, contrary to law, and without force and effect, and order the immediate rescission of Defendants' acceptance of title to the land in trust.

## STATEMENT OF FACTS

### A.  Legal Framework

### 1.        The Indian Reorganization Act of 1934 and Implementing Regulations

Section 5 of the Indian Reorganization Act of 1934 authorizes the Secretary to acquire land in trust for "Indians." 25 U.S.C. § 5108. The regulations for implementing Section 5 are set forth at 25 C.F.R. Part 151.

In 2013, the Secretary revised one section in Part 151—25 C.F.R. § 151.12. *See Land Acquisitions: Appeals of Land Acquisitions Decisions*, 78 Fed. Reg. 67,928 (Nov. 13, 2013). Subsection (c) provides, "A decision made by the Secretary, or the Assistant Secretary–Indian Affairs pursuant to delegated authority, is a final agency action under 5 U.S.C. 704 upon issuance." 25 C.F.R. § 151.12(c). Subsection (c) requires "the Assistant Secretary" to provide the decision to the applicant, to publish notice in the Federal Register "promptly," and to "immediately acquire the land in trust under § 151.14 on or after the date such decision is issued and upon fulfillment of the requirements of § 151.13 and any other Departmental requirements." *Id*. § 151.12(c)(2).

Subsection (d), by contrast, authorizes BIA officials, pursuant to delegated authority, to issue non-final trust decisions. *Id*. § 151.12(d). Such decisions are "not a final agency action of the Department under 5 U.S.C. § 704 until administrative remedies are exhausted under part 2 of this chapter or until the time for filing a notice of appeal has expired and no administrative appeal has been filed." *Id*. § 151.12(d). Title to land cannot be acquired in trust until the decision is final for the Department under 5 U.S.C. § 704. *See id*. § 151.12(c), (d)(2)(iv).

### 2. The Appointments Clause and the Federal Vacancies Reform Act

The Appointments Clause states that President of the United States "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

The Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. §§ 3345-3349d, controls who may serve in an office requiring Presidential appointment and Senate confirmation under the Appointments Clause (referred to as a "PAS office") on a temporary basis. If a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the general rule is that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity" for no longer than 210 days. *Id*. §§ 3345(a)(1); 3346(a)(1). Alternatively, the President (and only the President) may direct: (a) an official already serving in another PAS office to serve on a temporary basis in the vacant office; or (b) a senior official within the agency where the PAS office is to fill the vacancy, if the senior official meets certain requirements. *Id*. § 3345(a)(2), (3).

The FVRA provides that "Sections 3345 and 3346 are *the exclusive means* for temporarily authorizing an acting official to perform the functions and duties" of a PAS office, unless Congress has provided otherwise by statute or the President makes a recess appointment. *Id*. § 3347(a) (emphasis added). In the absence of an officer permitted under the FVRA to perform the "functions and duties" of the PAS office, "the office shall remain vacant and … only the head of such Executive agency may perform any function or duty of such office." *Id*. § 3348(b).

Any action taken by an official "who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to

which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect" and may not be ratified. *Id*. § 3348(d).

**B.     The Present Dispute**

**1.     The pre-January 19, 2017, proceedings**

For over three years, BIA evaluated an application to have an approximately 282-acre parcel of land located in Galt, California, acquired in trust for the Wilton Rancheria to be developed as a casino and hotel resort. BIA initiated its review in December of 2013 and published a Notice of Availability for the draft environmental impact statement for the Galt Site on December 29, 2015. *Notice of Intent to Prepare an Environmental Impact Statement for the Proposed Wilton Rancheria Fee-to-Trust and Casino Project, Sacramento County, California*, 78 Fed. Reg. 72,928-01 (Dec. 4, 2013); *Draft Environmental Impact Statement for the Proposed Wilton Rancheria Fee-to-Trust and Casino Project, Sacramento County, California*, 80 Fed. Reg. 81,352 (Dec. 29, 2015). In June 2016, however, the Wilton Rancheria announced that it wanted to pursue trust land in Elk Grove, California instead. ECF No. 2-9 at Exhibit J.

On November 17, 2016, BIA issued a "notice of an application seeking acceptance of title to real property 'in trust' by the United States of America for the Wilton Rancheria, California"—the first federal notice that the Wilton Rancheria had formally filed a trust application for land in Elk Grove. ECF No. 2-11 at 8-15 of 63. The application identifies as the proposed trust land a 36-acre parcel located in Elk Grove, California (Elk Grove Site), and as the purpose of the acquisition, development of a 608,756 square-foot casino and hotel resort. *Id*.

Less than a month later, BIA published notice in the Federal Register that a final environmental impact statement was available for public review and comment. *See Final Environmental Impact Statement and Revised Draft Conformity Determination for the Proposed Wilton Rancheria Fee-to-Trust and Casino Project, Sacramento County, California*, 81 Fed. Reg. 90,379 (Dec. 14, 2016). EPA published a notice of availability two days later, which identified January 17, 2017 as the end of the review period. *See Environmental Impact Statements; Notice of Availability,* 81 Fed. Reg. 91,169 (Dec. 16, 2016); *see also* 40 C.F.R. §

1506.10(b)(2). Based on EPA's notice, the Secretary or the Assistant Secretary could issue a final trust decision, triggering the Assistant Secretary's obligation to immediately acquire title to land in trust as soon as January 17, 2017. *See* 25 C.F.R. § 151.12(c); 40 C.F.R. § 1506.10(b)(2).

Plaintiffs Stand Up for California!, Joe Teixeira, Patty Johnson, and Lynn Wheat (collectively, "Stand Up") contacted Defendants on multiple occasions to request that the Assistant Secretary agree to delay the acquisition of title in trust after a final decision was issued long enough to allow Stand Up to seek emergency judicial relief pursuant to 5 U.S.C. § 705, but Defendants refused. *See* ECF No. 2. Stand Up thereafter filed a Complaint and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction on January 11, 2017, citing the potential loss of rights arising under state law as irreparable harm. ECF No. 1; ECF No. 2 at 2-3.

On January 13, 2017, the Court denied Stand Up's motion for a temporary restraining order, in part because Stand Up could not establish that a final trust decision was imminent or that it would be adverse. *See* Minute Entry Denying Motion for Temporary Restraining Order (Jan. 13, 2017). The Court also concluded that Stand Up failed to establish that the acquisition of title in trust would cause irreparable harm.

On January 17, 2017, the parties filed a Joint Status Report in lieu of briefing the preliminary injunction with the Court. *See* ECF No. 6. The Report disclosed that Stand Up filed a formal request with Defendants for a stay under 5 U.S.C. § 705 and that the parties agreed that "Plaintiffs [would] review any final decisions and confer with Defendants at that time as to the necessity of and timing for seeking emergency and/or preliminary injunctive relief." *Id.* at 2.

**2.      The January 19, 2017, Record of Decision signed by the Principal Deputy**

On the evening of January 19, 2017, Stand Up learned that Defendants had issued a Record of Decision (January 19th ROD) approving the Wilton Rancheria's trust application and contacted counsel for Defendants to request a copy. *See* ECF Nos. 17-1 (January 19th ROD); 17-2. Counsel for Defendants provided Stand Up with a copy of the January 19th ROD, which was signed by Mr. Lawrence Roberts (Roberts) as Principal Deputy, and confirmed that title to the

land would not be acquired before Defendants answered Stand Up's request for an administrative stay under 5 U.S.C. § 705. *See id.*; *see also* ECF No. 17-1. Defendants would not indicate when they expected to resolve Stand Up's Section 705 request. ECF No. 17-2 at 2.

Stand Up contacted Defendants on January 23, 2017 to discuss amending their complaint, the possibility of seeking expedited review or of reaching an agreement to stay the transfer of title to the Elk Grove Site, and the timing of Defendants' response to Stand Up's stay request. ECF No. 17-3. Defendants responded that they were still considering the stay request and that they would consider the request for an agreement to alleviate the need for emergency or expedited proceedings. *Id.*

On January 26, 2017, Stand Up requested a meeting with Defendants to discuss concerns regarding the January 19th ROD and a reasonable timeline for resolving Stand Up's challenge. ECF No. 17-4. Receiving no answer, Stand Up repeated the request on February 6, 2017; Defendants indicated that they were "still considering it." ECF No. 17-6.

On the evening of February 10, 2017, Defendants informed Stand Up by email that they were denying their request for a meeting and for a stay. ECF No. 17-7. Defendants' denial of Stand Up's stay request (February 10th Denial) was signed by Mr. Michael Black (Black), as Acting Assistant Secretary. ECF No. 17-8 at 8. Defendants subsequently confirmed that they had acquired title to the Elk Grove Site in trust on February 10, 2017. ECF No. 17-9.

### 3.     The post-February 10, 2017, proceedings before the Interior Board of Indian Appeals

On February 15, 2017, Stand Up requested an explanation of Defendants' authority to acquire title to the Elk Gove Site, noting that agency regulations do not authorize the Principal Deputy to issue final trust decisions. *See* ECF No. 17-9. Defendants did not respond to Stand Up's inquiry.

Notice of the January 19th ROD was not then and has not been published in the Federal Register. *See* 25 C.F.R. § 151.12(c)(2)(ii) (requiring "prompt" publication). Section 151.12(c) authorizes only the Secretary and the Assistant Secretary to issue final trust decisions. *See id.* §

151.12(c). Section 151.12(d) authorizes BIA officials to issue non-final trust decisions, but requires "[a]ny party who wishes to seek judicial review of an official's decision [to] exhaust administrative remedies under 25 CFR part 2." *Id*. § 151.12(d)(4).

Since it appeared there could be no final trust decision, Stand Up filed a Notice of Appeal, a Petition for Preliminary Relief, and a Statement of Reasons on February 21, 2017 with the Interior Board of Indian Appeals (IBIA), challenging—among other issues—the finality of the Principal Deputy's decision, the authority of Defendants to acquire title to the Elk Grove Site in trust, and violations of the Federal Vacancies Reform Act. *See* ECF No. 17-10. The IBIA issued a Pre-Docketing Notice and Order for Briefing on Jurisdiction on February 24, 2017, ordering BIA and other interested parties to brief by March 17, 2017 whether the January 19th ROD was final and therefore whether IBIA had jurisdiction over the appeal. *See* ECF No. 17-13.

On February 24, 2017, Stand Up asked this Court to hold the case in abeyance, pending resolution of the proceedings before IBIA, and Defendants subsequently indicated that they did not oppose the motion. *See* ECF Nos. 16, 17. This Court suspended all pending deadlines, stayed the case, and ordered the parties to notify the Court when the question whether IBIA had or should assume jurisdiction to hear Stand Up's administrative appeal was resolved. *See* Minute Order (Mar. 6, 2017).

A day later, Black filed a notice with IBIA, indicating that he was assuming jurisdiction over the appeal in his capacity as Acting Assistant Secretary–Indian Affairs. Declaration of Jennifer A. MacLean (Sept. 29, 2017), attached as Exhibit 1 at Tab A. Black cited two Secretarial Orders, one issued by the Secretary of the Interior on January 19, 2017, and another issued by the Acting Secretary of the Interior on January 20, 2017.[1] Both purport to delegate

---

[1] Black served as the Director of BIA until November 2, 2016, after which he was named Senior Advisor to the new BIA Director. https://www.doi.gov/pressreleases/interior-department-taps-experienced-leaders-key-positions-indian-affairs-and (last visited Sept. 28, 2017). Secretary Sally Jewell issued a Secretarial Order on January 19, 2017, assigning Black the Assistant Secretary's responsibilities. Order No. 3345 (Jan. 19, 2017). The Acting Secretary Jack Haugrud issued another Secretarial Order on January 20, 2017, iterating the same. Order No. 3345A-1 (Jan. 20, 2017). *See also* Order No. 3345A-5 (May 19, 2017) (Temporary Redelegation by

"[a]ll functions, duties, and responsibilities" of the Assistant Secretary to Black, the Special

Assistant to the BIA Director, excluding those required by statute or regulation to be performed

by a PAS officer. *See id.* n.1. IBIA vacated the briefing order on March 8. Ex. 1, Tab B.

Stand Up filed an objection with IBIA on March 15, 2017, challenging Black's authority

to assume jurisdiction, which IBIA forwarded to Black on March 17, 2017. Ex. 1, Tabs C, D.

Stand Up additionally filed a petition with the Secretary, asking him to assume jurisdiction of the

appeal. Ex. 1, Tab E.

### 4.      The July 13, 2017 dismissal of Stand Up's appeal

On July 13, 2017, Black dismissed the appeal (July 13th Dismissal). Ex. 1, Tab F. The

July 13th Dismissal states that Roberts, as the Principal Deputy, served as the "first assistant" to

the Assistant Secretary between June of 2013 and December of 2015 and automatically became

the Acting Assistant Secretary upon the Assistant Secretary's resignation in December of 2015.

*Id*. at 4-5. Roberts served as Acting Assistant Secretary for 210 days (January 1, 2016 to July 29,

2016), at which point he resumed his position as Principal Deputy. *Id.* at 5.

The July 13th Dismissal states that, pursuant to Sections 8.1 and 8.4 of Part 209 to the

Department Manual, the Principal Deputy was authorized to exercise all of the authority

delegated to the Assistant Secretary. *Id.* The July 13th Dismissal concludes that the Principal

Deputy had the authority to issue the January 19th ROD, and that Defendants therefore had

authority to acquire title in trust five months earlier. *Id.*

Based on Defendants' conclusion in the July 13th Dismissal that the January 19th ROD

was final agency action under 5 U.S.C. § 704, the parties filed a Joint Status Report on August 2,

2017.[2] ECF No. 22. Stand Up filed an Amended Complaint on August 10, 2017. ECF No. 26.

---

Secretary Ryan Zinke) (same). For the Court's convenience, Stand Up has attached the
authorities and delegations cited in the July 13th Dismissal that are publicly available to Exhibit
1 at Tab G.

[2] The Wilton Rancheria filed an unopposed motion to intervene on February 15, 2017, *see* ECF
No. 15, which this Court granted on February 24, 2017.

## ARGUMENT

Under the Administrative Procedure Act (APA), a court must set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In 2013, Secretary revised 25 C.F.R. § 151.12 to clarify the process for issuing and implementing trust decisions. Section 151.12(c) now states that only the Secretary and the Assistant Secretary—both PAS officers—are authorized to issue final trust decisions and it directs the Assistant Secretary to implement their decisions. Defendants violated Section 151.12(c) when the Principal Deputy issued the January 19th ROD and Defendants subsequently acquired title to the Elk Grove Site in trust. Because Section 151.12(c) expressly limits the power to issue final trust decisions to the Secretary or the Assistant Secretary, Defendants also violated the FVRA, which prohibits inferior officers from performing those functions and duties.

### A. The January 19th ROD and Defendants' subsequent acquisition of title violate Section 151.12(c)

It is "axiomatic that an agency is bound by its own regulations." *Texas* v. *EPA*, 726 F.3d 180, 200 (D.C. Cir. 2013) (quoting *Panhandle Eastern Pipe Line Co.* v. *FERC*, 613 F.2d 1120, 1135 (D.C. Cir. 1979)); *see Crawford* v. *FCC*, 417 F.3d 1289, 1297 (D.C. Cir. 2005) ("[A]n agency's failure to follow its own regulations is fatal to the deviant action.") (quoting *Florida Institute of Technology* v. *FCC*, 952 F.2d 549, 553 (D.C. Cir. 1992)).

Defendants ignored two unambiguous constraints on their trust authority: the limits Section 151.12 imposes on (1) which Department officials are authorized to decide trust requests; and (2) when their decisions are final for the Department, permitting the acquisition of title in trust. Because Section 151.12 does not authorize the Principal Deputy to issue *any* trust

decision, let alone one that is final for the Department, the January 19th ROD and subsequent acquisition of title violated both constraints.

1.      Section 5 of the Indian Reorganization Act authorizes "the Secretary of the Interior" to acquire land in trust "for the purpose of providing land for Indians." 25 U.S.C. § 5108. Section 151.12 establishes the requirements for deciding trust requests and authorizes only the Secretary, the Assistant Secretary, and BIA officials pursuant to delegated authority to decide trust requests. 25 C.F.R. § 151.12(c), (d). No other official is authorized to take action on a trust request.

Under subsection (c), the Secretary or the Assistant Secretary may decide a trust application personally, in which case the decision is immediately final for the Department. *See* 25 C.F.R. § 151.12(c) ("A decision made by the Secretary, or the Assistant Secretary–Indian Affairs pursuant to delegated authority, is a final agency action under 5 U.S.C. 704 upon issuance."). A BIA official may also decide a trust application, but such a decision is not final for the Department and is subject to an administrative appeal. *See id*. § 151.12(d) ("A decision made by a [BIA] official pursuant to delegated authority is not a final agency action of the Department under 5 U.S.C. 704 until administrative remedies are exhausted under part 2 of this chapter or until the time for filing a notice of appeal has expired and no administrative appeal has been filed.").

The preamble to the final rule explicitly restates what the plain language establishes: "This final rule revises section 151.12 to provide clarification and transparency to the process for issuing decisions by the Department, *whether the decision is made by the Secretary, Assistant Secretary–Indian Affairs (AS-IA), or a Bureau of Indian Affairs (BIA) official*." 78 Fed. Reg. at 67,929 (emphasis added). The regulation itself permits no other reading, as underscored by the preamble's explanation of "*Who the Decision Maker Should Be*." There, the Secretary rejected a proposal for having the Deputy Assistant Secretary decide all the trust applications the Assistant Secretary normally would decide to allow for administrative appeal. 78 Fed. Reg. at 67,934. The Secretary explained that the Assistant Secretary "retains the discretion to issue a decision *or*

assign responsibility to a Deputy Assistant Secretary to issue the decision *under 25 CFR 2.20(c)*," the regulation that authorizes the Assistant Secretary to assume jurisdiction over an appeal from the IBIA during a 20-day window. *Id.* (emphasis added). The only time then the Principal Deputy can take action on a trust application is when the Assistant Secretary notifies the IBIA that he is assigning the Deputy Assistant Secretary responsibility for issuing a decision (on a non-final basis). *See* 25 C.F.R. § 2.20(c).

2.    Title to land cannot be acquired in trust before a trust decision is final for the Department under 5 U.S.C. § 704. If the Secretary or the Assistant Secretary decides a trust application, Section 151.12(c) directs the Assistant Secretary—*and only the Assistant Secretary*—to acquire title "immediately . . . on or after the date such decision is issued." 25 C.F.R. § 151.12(c)(2)(iii). If a BIA official issues the decision, title to land cannot be acquired in trust until *after* administrative remedies are exhausted or the time for filing a notice of appeal has expired. *See id.* § 151.12(d).

Section 151.12 does not authorize the Principal Deputy to issue any decision, let alone one that is final for the Department. It hardly requires noting that the Principal Deputy is not "the Secretary," nor "the Assistant Secretary–Indian Affairs pursuant to delegated authority." The Principal Deputy is also not a BIA official. *See* 130 DM 2.1 ("The Bureau of Indian Affairs is headed by a Director, who reports to the Principal Deputy Assistant Secretary–Indian Affairs.") and 110 DM 8 (Principal Deputy serves in Office of the Assistant Secretary).[3] Section 151.12 therefore does not authorize the Principal Deputy to take action on a trust request *at all*. In issuing the January 19th ROD, he acted outside the scope of his authority and in violation of Section 151.12. It follows that the subsequent acquisition of title in trust on February 10, 2017, was also ultra vires.

Defendants' violations of Section 151.12(c) are fatal to the January 19th ROD and subsequent acquisition of title. *See Crawford* v. *FCC*, 417 F.3d at 1297.

_____

[3] The sections of the Department of the Interior Department Manual (DM) cited herein are attached to Exhibit 1 at Tab H.

**B.**   **Defendants' post hoc justification underscores the illegality of the January 19th ROD and subsequent acquisition**

In the July 13th Dismissal, Defendants attempt to justify their actions by arguing that Section 151.12(c) does not mean what it says and that the Secretary has broad power to delegate the Assistant Secretary's authority to issue final trust decisions to any "officers and employees in the Department" they deem appropriate. Ex. 1, Tab F at 6. Their arguments fail.

**1.**   **Defendants' construction of Section 151.12(c) is contrary to its plain text**

Defendants assert that "the [Assistant Secretary's] functions or duties under 25 C.F.R. § 151.12 are non-exclusive, and . . . the authority to perform them may be delegated to other appropriate officers and employees in the Department." Ex. 1, Tab F at 6. Their argument is not grounded in the text of the regulation—in fact, they never quote Section 151.12(c). Instead, Defendants discuss 25 C.F.R. Part 151 generally, citing provisions that were promulgated thirty years ago, not those in the 2013 revision. Section 151.12(c) cannot be construed as Defendants advocate.

Courts are not to defer to agency interpretations of unambiguous regulations. *See Christensen* v. *Harris Cnty.*, 529 U.S. 576, 588 (2000). Section 151.12(c) unambiguously authorizes only two officials to issue final trust decisions and prohibits delegation. *See* 25 C.F.R. § 151.12(c). The regulation does this in two ways.

First, while a prior version of the rule used the word "Secretary," which Section 151.2(a) defines as "Secretary or authorized representative," the 2013 rule replaced that word with "the Secretary, or the Assistant Secretary–Indian Affairs pursuant to delegated authority."[4] Because the Assistant Secretary is by law and delegation the Secretary's "authorized representative," this change served no purpose other than to limit the authority to make final trust decisions to those

---

[4] The original definition of "Secretary" in Section 151.2(a) was adopted in 1980. *Land Acquisitions*, 45 Fed. Reg. 62,034, 62,036 (Sept. 18, 1980) (codified at 25 C.F.R. Part 120a.2(a)). When the Secretary revised the trust regulations to address off-reservation acquisitions in 1995, he retained that definition but emphasized that trust "decisions will be appealable if they are made below the Assistant Secretary–Indian Affairs' level." *Land Acquisitions (Nongaming)*, 60 Fed. Reg. 32,874, 32,878 (June 23, 1995).

two officials. Construing "Secretary" in Section 151.12(c) to mean "the Secretary or authorized representative," as Defendants suggest, would render the phrase "or the Assistant Secretary–Indian Affairs pursuant to delegated authority" superfluous. Defendants' interpretation contravenes the principle that a regulation, like a statute, should "be so construed that, if it can be prevented, no clause" is rendered "superfluous, void or insignificant." *TRW, Inc.* v. *Andrews*, 534 U.S. 19, 31 (2001) (citations omitted).

Second, unlike Section 151.2(a), Section 151.12(c) does not use "or authorized representative" to modify "Assistant Secretary." Rather, Section 151.12(c) authorizes "the Assistant Secretary–Indian Affairs" to issue final trust decisions "pursuant to delegated authority"—namely, the authority delegated to the Assistant Secretary. *See* 209 DM 8. The phrase "pursuant to delegated authority" is limiting in this context and cannot reasonably be read to permit re-delegation by the Assistant Secretary. Had the Secretary intended to allow the Assistant Secretary to re-delegate the authority to issue final trust decisions to subordinate officials, the final rule would have used the phrase "or authorized representative," but it does not.[5] These changes must be given effect, and they override the generic delegation provisions upon which Defendants rely. "[I]t is a commonplace of statutory construction that the specific governs the general." *NLRB* v. *SW Gen., Inc*., 137 S. Ct. 929, 941 (2017) (quoting *RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

In addition, Section 151.12(c) specifically identifies only one official to *implement* final trust decisions—namely, the "Assistant Secretary." Section 151.12(c) requires the "Assistant Secretary" to inform the applicant of the trust acquisition decision, to promptly publish notice in the Federal Register, and to "immediately" acquire the land in trust. 25 C.F.R. § 151.12(c)(2). By contrast, Section 151.12(d), which authorizes BIA officials to issue non-final trust decisions, directs "the official" to provide notice and meet other requirements. *See id.* § 151.12(d)(1), (2).

---

[5] The July 13 Dismissal cites 209 DM 8.4.A. as authorizing the Principal Deputy to exercise the Assistant Secretary's authority. Ex. 1, Tab F at 5 n.30. Section 8.4.A is a re-delegation from the Assistant Secretary, which Section 151.12(c) does not permit.

The Court must assume that the choice of different language within the same provision is intentional. *Russello* v. *United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States* v. *Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Defendants' interpretation is not only contrary to the plain language of the regulation, it undermines a key purpose of the rule—that of providing "clarification and transparency to the process for issuing decisions." 78 Fed. Reg. at 67,929. Section 151.12 cannot provide clarity or transparency if the authority to issue final trust decisions can be re-delegated to anyone. Section 151.12 does not state whether a decision by the Principal Deputy is final, whether administrative remedies must be exhausted, or what notice is required because Section 151.12 does not identify the Principal Deputy at all. Indeed, the conclusion that the Principal Deputy's decision is final is contrary to the regulations that govern appeals, which state that decisions of the Assistant Secretary are final, but those of a Deputy are not. *See* 25 C.F.R. § 2.6(b), (c); 25 C.F.R. § 2.20(c).

Defendants' construction is contrary to the plain language and renders most of the revisions to Section 151.12(c) and (d) meaningless. The Court must reject it.

### 2.  Defendants' construction of Section 151.12(c) raises constitutional questions

The Appointments Clause provides that the President shall appoint "Officers of the United States" with the advice and consent of the Senate, "but the Congress may by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. While the Secretary and the Assistant Secretary are appointed by the President with the advice and consent of the Senate, the Principal Deputy and subordinate BIA officials are not. The appointment of those subordinate officials is therefore valid only if those officials are deemed to be "inferior officers" within the meaning of the Appointments Clause.

The decision to take land into trust is a significant exercise of federal power. Trust decisions have significant consequences for the jurisdictional balance between the federal government and the states. As the Supreme Court has recognized, "complex interjurisdictional concerns . . . arise when a tribe seeks to regain sovereign control over territory." *City of Sherrill, N.Y.* v. *Oneida Indian Nation of N.Y.*, 544 U.S. 197, 220-21 (2005). Land taken into trust is exempt from state and local taxation, 25 U.S.C. § 5108, and under agency regulations at least, state civil and criminal jurisdiction and local zoning requirements, *see* 25 C.F.R. § 1.4; *DeCoteau* v. *District County Court for Tenth Judicial Dist.*, 420 U.S. 425, 428 (1975); *but see* 25 U.S.C. § 5108 (stating that trust lands "shall be exempt from State and local taxation" with no reference to jurisdiction).

The Appointments Clause does not permit such significant power to be vested in an inferior officer who is not subject to supervision by a Senate-confirmed officer. Although the Supreme Court has not set out a comprehensive definition of "inferior officer," the Court has observed that it is "evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond* v. *United States*, 520 U.S. 651, 663 (1997). As Justice Alito has put it, "[i]nferior officers can do many things, but nothing final should appear in the Federal Register unless a Presidential appointee has at least signed off on it." *Dep't of Transp.* v. *Ass'n of Am. Railroads*, 135 S. Ct. 1225, 1239 (2015) (Alito, J., concurring). Section 151.12(c)(2)(ii) requires such publication when the Secretary or the Assistant Secretary issue a decision.

The revisions the Secretary made to Section 151.12 in 2013 are consistent with those principles because inferior officers at the BIA are permitted to make only preliminary trust decisions.[6] Their decisions are subject to administrative review by the IBIA and the Secretary or

---

[6] The Department has long differentiated between PAS officers and agency officials. The appeal regulations in 25 C.F.R. Part 2 state that decisions by BIA officials are not final until "the time for filing a notice of appeal has expired and no notice of appeal has been filed," while decisions by the Assistant Secretary are "final for the Department and effective immediately." 25 C.F.R. §

Assistant Secretary. If, on the other hand, such officials were permitted to make final trust-acquisition decisions—as Defendants now advocate—they would no longer be acting as inferior officers, and their appointment—without Senate confirmation—would violate the Appointments Clause.

The power exercised under Section 151.12(c) is all the more significant, now that the Assistant Secretary must "[i]mmediately acquire the land in trust . . . on or after the date such decision is issued." 25 C.F.R. § 151.12(c)(2)(iii). Final trust decisions are to be implemented immediately, even before state and local governments receive notice of the decision. The jurisdictional governments, under such circumstances, have no opportunity to seek emergency relief under 5 U.S.C. § 705. The power to immediately eliminate state and local jurisdiction, as Defendants interpret their trust authority, is a power that must reside only with a Senate-confirmed Officer of the United States. To avoid this constitutional infirmity, the Court should reject the interpretation Defendants advance.

### 3. The Department Manual delegations Defendants cite cannot override duly promulgated regulations

The delegations Defendants cite cannot salvage the January 19th ROD. The Departmental Manual provides for the delegation of certain functions of the Secretary to the Principal Deputy Assistant Secretary. *See* 209 DM 8.1 (Assistant Secretary can exercise authority of the Secretary); 209 DM 8.4 (In the absence of the Assistant Secretary, the Principal Deputy can exercise the authority of the Assistant Secretary). Those delegations, however, do not permit redelegation where "prohibited by statute, Executive order, or *limitations established by other competent authority*." 209 DM 8.3 (emphasis added).[7]

---

2.6(b), (c). Decisions by the Principal Deputy are not final, even when the Assistant Secretary assigns him responsibility for deciding an appeal under Section 2.20(c). 25 C.F.R. § 2.20(c).

[7] Moreover, all delegations must be in the form of a DM release in compliance with 200 DM 3. *See* 209 DM 8.3. Not only is the June 2013 delegation to the Principal Deputy not (now) publicly available, the Principal Deputy was not delegated authority after July 29, 2016. The Deputy Secretary tried to cure this problem sometime on January 19, 2017, by issuing a memorandum (also not publicly available) stating that although the Department intended for the Principal Deputy "to continue to exercise the functions and duties of the [Assistant Secretary] . . . the

Those provisions of the Departmental Manual—which were not adopted through notice-and-comment rulemaking procedures—cannot displace the contrary provisions of Section 151.12(c), which make clear that the authority to make final trust-acquisition decisions resides only in the Secretary and the Assistant Secretary, not in their subordinates. *See Schweiker* v. *Hansen*, 450 U.S. 785, 789 (1981) (agency manual is not binding where it is contrary to a published regulation). To the extent the Manual provisions are taken to reflect a contrary interpretation of Section 151.12, that interpretation would not be entitled to deference because it is "plainly erroneous or inconsistent with the regulation." *Auer* v. *Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson* v. *Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)).[8] Indeed, since the only function of Section 151.12 is to allocate trust acquisition authority among officials of the Department of the Interior, an interpretation of the regulation that permitted redelegation of the authority assigned to the Secretary and the Assistant Secretary would make the regulations largely pointless.[9] This Court should reject such an interpretation.

**C.      Because the power to issue final trust decisions is a function or duty of a PAS officer, the January 19th ROD and subsequent acquisition violated the Federal Vacancies Reform Act.**

Neither the Secretary nor the Assistant Secretary issued the January 19th ROD, as Section 151.12(c) requires. Accordingly, the January 19th ROD must be set aside and the acceptance of title rescinded on that basis. Because Section 151.12(c) requires final trust

---

Department did not explicitly delegate that authority to you in writing." Ex. 1, Tab I. The memorandum concludes: "To the extent that it is determined that you lacked such authority, I hereby ratify and approve any actions you have taken under the authority of the [Assistant Secretary]." *Id.*

[8] In any event, deference to the Secretary's interpretation would also be inappropriate because *Auer* was wrongly decided and should be overruled for the reasons discussed in the concurring opinions in *Perez* v. *Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1210-25 (2015). This Court is currently bound by *Auer*, but Plaintiffs preserve the issue for further review.

[9] Furthermore, the sub-delegation to the Principal Deputy is limited. The Assistant Secretary apparently relied on 302 DM 2 to issue the June 2013 succession order identifying Roberts as the "first assistant" to the Assistant Secretary. That chapter explicitly limits the circumstances under which the Principal Deputy may act. Under Section 2.5, a first assistant may exercise the Assistant Secretary's authority only when "a designated superior is unable and unavailable to exercise authority *and immediate action is required*." 302 DM 2.5 (emphasis added); *see also* 302 DM 1.5 (same).

decisions to be issued by a PAS officer only, Defendants also violated the FVRA. The FVRA provides a separate basis for setting aside the January 19th ROD and subsequent trust acquisition.

The FVRA protects the Appointments Clause by limiting who may perform the "functions and duties" of an office requiring Presidential appointment and Senate confirmation when the officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," and for how long. 5 U.S.C. §§ 3345(a), 3346(a). The general rule is that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity" for no longer than 210 days. *Id*. §§ 3345(a)(1), 3346(a)(1). Alternatively, the President (and only the President) may direct an official meeting specific qualifications "to perform the functions and duties of the vacant office temporarily in an acting capacity." *Id*. § 3345(a)(2), (3). After 210 days, the PAS office must remain vacant until a PAS officer is nominated and confirmed. *See id*. § 3348(b)(1).

A "function or duty" of a PAS office is "any function or duty" that (1) is established by statute or regulation and (2) is required by statute or regulation "to be performed by the applicable officer (and only that officer)." *Id*. § 3348(a)(2). The functions and duties of the PAS office cannot be exercised in a manner contrary to the FVRA: "Sections 3345 and 3346 are the *exclusive means* for temporarily authorizing an acting official to perform the functions and duties of any" PAS office, absent statutory authorization. 5 U.S.C. § 3347(a) (emphasis added).

The Office of Assistant Secretary is a PAS office subject to the limitations set forth in the FVRA. *See* Reorganization Plan No. 3 of 1950, 64 Stat. 1262, as amended June 1, 1971, Pub.L. 92-22, § 3, 85 Stat. 76. Section 151.12 is a duly promulgated regulation. *See* 78 Fed. Reg. 67,928 (Nov. 13, 2013). The regulation establishes the authority to issue final trust decisions and limits the exercise of that authority to the Secretary or the Assistant Secretary only. *See* 25 C.F.R. § 151.12(c). It further limits the implementation of a final decision to the Assistant Secretary only. *See id*. § 151.12(c)(2). Thus, the authority to issue a final trust decision and its implementation is unmistakably a "function or duty" of the Assistant Secretary under the FVRA.

By issuing the January 19th ROD in violation of Section 151.12(c), the Principal Deputy performed a "function or duty" established by regulation and required by regulation to be made and implemented by the Assistant Secretary only. Although the Principal Deputy served as the Acting Assistant Secretary from January 1, 2016 to July 29, 2016, pursuant to Section 3345(a)(1) of the FVRA, he was statutorily prohibited from performing the functions or duties of that Office as of July 30, 2016. *See* Ex. 1, Tab F at 5. Because the January 19th ROD and subsequent acquisition were performed in violation of the FVRA, they "shall have no force or effect" and cannot be ratified. 5 U.S.C. § 3348(d).

Defendants argue that these statutory and regulatory limits on their authority do not apply, and they continue to operate in violation of both. Since the January 19th ROD, Black has served as the Acting Assistant Secretary and has performed "functions and duties" of that Office, despite not being eligible to do so. He was not the "first assistant" to the Assistant Secretary, nor appointed by the President, as the FVRA requires. *See* 5 U.S.C. § 3345(a). Yet he directed BIA officials to acquire title to land in trust on February 10, 2017, even though that responsibility belonged exclusively to the Assistant Secretary. *See* 25 C.F.R. § 151.12(c)(2). And on March 7, 2017, Black assumed jurisdiction of Stand Up's appeal from the IBIA, citing "the authority vested in the Assistant Secretary–Indian Affairs." Ex. 1, Tab A at 1. Section 2.20(c), however, authorizes only the Assistant Secretary to assume jurisdiction of an appeal from IBIA. *See* 25 C.F.R. § 2.20(c); *see also* 54 Fed. Reg. 6478, 6479 (Feb. 10, 1989) (Final rule "intended to vest exclusive authority to assume jurisdiction over an appeal in the Assistant Secretary ….") and *id.* at 6485 ("[T]he final regulations issued by the [BIA] show that the authority to assume jurisdiction over an appeal lies exclusively with the Assistant Secretary ….").

The absence of a Senate-confirmed Assistant Secretary since January 1, 2016, has had no effect on Defendants' decision-making because Defendants interpret the FVRA and agency regulations to prohibit delegation of only three functions: "disapproval of mineral agreements, certain Indian preference determinations, and functions related to Indian education." Ex. 1, Tab F

at 6 n.37. In their estimation, every other power is delegable. The agency, after all, must be able to "to continue to operate effectively in the absence of a confirmed PAS." *Id*. at 4.

But that is exactly wrong. Congress enacted the FVRA to address a "[p]erceiv[ed] threat to the Senate's advice and consent power." *SW General*, 137 S. Ct. at 936. "[T]he Appointments Clause is not an empty formality." *Id*. at 948 (Thomas, J. concurring). It is supposed to serve an important purpose by "ensuring that the powers of Government would never be consolidated in one body." *Id*. (citing The Federalist No. 51, p. 348). But if an agency can interpret its regulations to allow it "to continue to operate effectively in the absence of a confirmed PAS," as Defendants have here, a President would have little incentive to appoint an officer to undergo the confirmation process. Defendants may prefer to continue operations as usual in the absence of PAS officers, but that is not what the Constitution and the FVRA allows.

## CONCLUSION

For the foregoing reasons, Stand Up requests that the Court grant this motion for summary judgment.

Dated: October 1, 2017

Respectfully submitted,

By:   */s/ Jennifer A. MacLean*

    Jennifer A. MacLean, Bar No. 1013448
    Benjamin S. Sharp
    **PERKINS COIE LLP**
    700 Thirteenth Street, N.W., Suite 600
    Washington, D.C.  20005-3960
    Telephone:  (202) 654-6200
    Facsimile:  (202) 654-6211
    JMacLean@perkinscoie.com
    BSharp@perkinscoie.com

    Eric D. Miller
    Julie Wilson-McNerney
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Phone: (206) 359-8000
    Facsimile: (206) 359-9000
    EMiller@perkinscoie.com
    JWilsonMcNerney@perkinscoie.com

    Attorneys for Plaintiffs
    Joe Teixeira
    Patty Johnson
    Lynn Wheat
    Stand Up for California!

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2017, I filed the foregoing with the Clerk of the Court using the ECF System which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.


 /s/ *Jennifer A. MacLean*
Jennifer A. MacLean