# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STAND UP FOR CALIFORNIA!, PATTY JOHNSON, JOE TEIXEIRA, and LYNN WHEAT**, | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-00058 (TNM) |
| **UNITED STATES DEPARTMENT OF INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; and JOHN TAHSUDA III, in his official capacity as Acting Assistant Secretary-Indian Affairs,** | |
| Defendants, | |
| and | |
| **WILTON RANCHERIA, CALIFORNIA** | |
| Intervenor-Defendant. | |

## <u>MEMORANDUM OPINION</u>

This case involves a uniquely Washingtonian question: when can a federal employee act in the place of an absent agency or unit head?  This issue becomes acute during presidential transitions, when thousands of senior political appointees exit the government, often leaving their positions vacant for months or even years.  Congress addressed this question through the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq*., and federal agencies have also developed complicated succession and delegation regulations.  As a result, it turns out that, in practice, there are very few duties that cannot be delegated to an "acting" officeholder, the

second-in-command (the "first assistant" to use the FVRA's term), or even another official who acts in the place of the principal pursuant to agency regulations or orders.

Here, Stand Up for California!, Patty Johnson, Joe Teixeira, and Lynn Wheat (collectively, "Plaintiffs") challenge the decision of the United States Department of the Interior, its Secretary of the Interior and Acting Assistant Secretary-Indian Affairs in their official capacities, and the Bureau of Indian Affairs (collectively, "Federal Defendants" or the "Department") to acquire land in trust for the Wilton Rancheria Tribe of California ("Wilton Rancheria" or the "Tribe"). The Plaintiffs allege that in delegating to the Principal Deputy Assistant Secretary-Indian Affairs and the Special Assistant to the Director of the BIA the authority to act in the place of the Assistant Secretary-Indian Affairs, the Department violated its own regulations and the FVRA. This Court granted the Wilton Rancheria's motion to intervene. Minute Order, Feb. 24, 2017. Now pending before the Court are the Plaintiffs' motion for summary judgment and the Department's and Wilton Rancheria's (collectively, the "Defendants") cross-motions for summary judgment. As jurisdiction and venue is proper in this Court,[1] and upon consideration of the pleadings, relevant law, related legal memoranda in opposition and in support, the parties' representations at oral argument, and the entire record, I find that no genuine issue of material fact exists and that the actions taken by Department employees in lieu of the Assistant Secretary-Indian Affairs (a vacant office at the time) were not in violation of departmental regulations or the FVRA. Accordingly, the Plaintiffs' motion for summary judgment will be denied, and the Defendants' cross-motions for summary judgment will be granted.

---

[1] *See* 28 U.S.C. §§ 1331, 1391, 2201-2202; 5 U.S.C. §§ 702, 706.

# I.    BACKGROUND

The Wilton Rancheria has been landless for nearly 60 years.  Mem. of P. & A. in Opp. to Pls.' Mot. for Summary J. and in Supp. of Wilton Rancheria, California's Cross-Mot. for Summary J. ("Tribe's Cross-Mot. for Summary J.") 5, ECF No. 41.  In 2013, the Tribe applied for the Bureau of Indian Affairs ("BIA") to acquire land in trust on its behalf, identifying a 282-acre parcel near Galt, California as the proposed site.  *See* Am. Compl. ¶ 31.  After three years of examination of the Galt site, the BIA published a notice of the final environmental impact statement shortly after the November 2016 presidential election, but for a different, 36-acre parcel of land in Elk Grove, California.  *See id.* ¶ 38.  As the Plaintiffs understood for the significant majority of the years-long process that the land to be acquired was in Galt, not Elk Grove, the Plaintiffs immediately sought to delay the acquisition of title to the Elk Grove land by making several requests to the Secretary of the Interior ("Secretary").  *Id.* ¶¶ 38, 40.  When the Plaintiffs' requests were refused, they filed suit in this District, seeking a temporary restraining order and preliminary injunction against the Department to prevent acquisition of title to the land.  *Id.* ¶ 41.  Another judge of this District denied the motions, after which the Plaintiffs formally applied to the Department for a stay under 5 U.S.C. § 705.  Minute Order, Jan. 13, 2017; Minute Order, Jan. 17, 2017; Am. Compl. ¶ 43.

Rather than halting the process, the Department shifted into warp speed—for a federal bureaucracy—to approve the application for the Elk Grove site.  On January 19, 2017, in the waning hours of the Obama Administration, Lawrence Roberts, the Principal Deputy Assistant Secretary-Indian Affairs, issued a Record of Decision approving the Wilton Rancheria's application and authorizing acquisition of the Elk Grove land in trust for the Tribe.  *See* Mot. to

Intervene Ex. A at 2-3. On February 10, 2017, Michael Black, signing as the Acting Assistant Secretary-Indian Affairs, denied the Plaintiffs' stay request, and the Plaintiffs filed an internal administrative notice of appeal. Am. Compl. ¶¶ 55, 57. The Plaintiffs argued that the Department violated its own regulations and the FVRA in deciding to acquire land in trust for the Tribe. *See* Mem. of P. & A. in Supp. of Pls.' Mot. for Summary J. ("Pls.' Mem. for Summary J.") Ex. E, ECF No. 33-1. In particular, the Plaintiffs construe the relevant regulation for trust land acquisitions, 25 C.F.R. § 151.12(c), as reserving the decision-making authority for final trust decisions exclusively to the Secretary or the Assistant Secretary-Indian Affairs (the "AS-IA," in Department lingo). *See id.*

On March 7, 2017, citing administrative appeals regulations, Mr. Black exercised jurisdiction over the appeal as the Acting AS-IA. Pls.' Mem. for Summary J. Ex. A, ECF No. 33-1. On July 13, 2017, Mr. Black, signing as the Acting AS-IA, dismissed the appeal, determining that the January 19, 2017 Record of Decision was a proper and final agency action. *See id.* Ex. F, ECF No. 33-1. Mr. Black reasoned that the FVRA permitted the delegation of the non-exclusive functions and duties of the AS-IA; and that Mr. Roberts, as the Principal Deputy Assistant Secretary, was duly delegated at the time, under the Department Manual, the non-exclusive functions and duties of the AS-IA, including approving the Tribe's application. *See id.*

The parties then returned to this Court and the Plaintiffs filed an amended complaint. Count One challenges Mr. Roberts' January 19, 2017 Record of Decision approving the Tribe's application as an *ultra vires* action in violation of agency regulations and the FVRA. Am. Compl. ¶ 70. Count Two challenges Mr. Black's decisions to acquire title in trust for the Tribe (February 10, 2017), assume jurisdiction over the Plaintiffs' appeal (March 7, 2017), and issue an order dismissing the appeal (July 13, 2017) as violations of agency regulations and the FVRA.

*Id.* ¶ 82.   The parties' cross-motions for summary judgment, including one by the Tribe as an intervenor-defendant, are now ripe.   Pls.' Mot. for Summary J., ECF No. 33; Mem. of P. & A. in Opp. to Pls.' Mot. for Summary J. and in Supp. of Fed. Defs.' Cross-Mot. for Summary J. ("Fed. Defs.' Cross-Mot. for Summary J."), ECF No. 40; Tribe's Cross-Mot. for Summary J., ECF No. 41.[2]

## II.    LEGAL STANDARD

To prevail on summary judgment, the movant must show an absence of a genuine issue of material fact and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The Court views the evidence in the light most favorable to the non-moving party.   *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

## III.    ANALYSIS

### A.  Statutory and Regulatory Scheme

As this matter involves the interplay between Congress' statutory scheme setting forth who is authorized to act for the United States under what circumstances and the Department's regulatory scheme implementing Congress' directives, I begin my analysis with an overview of the applicable statutes and regulations.

---

[2]  The Amended Complaint alleges three other counts involving the Indian Reorganization Act, the California Rancheria Termination Act, the Indian Gaming Regulatory Act, and the National Environmental Policy Act.   The Plaintiffs proffer that its motion raises issues of law that will resolve those counts; accordingly, the parties have briefed cross-motions for summary judgment only as to Counts One and Two.   *See* Pls.' Mot. for Summary J. 1.

In the Indian Reorganization Act of 1934, Congress delegated to the Department of the Interior authorization to acquire land in trust for Indians tribes. 25 U.S.C. § 5108. The Secretary has created procedures for these "fee-to-trust" actions in the Code of Federal Regulations. *See* 25 C.F.R. § 151.1 *et seq.* In particular, Section 151.12 requires the Secretary to review and approve or deny each request for land acquisition. 25 C.F.R. § 151.12(a)-(b). The Secretary may delegate this authority to the AS-IA or to an official in the BIA, which is a bureau under the purview of the AS-IA. 78 Fed. Reg. 67,928, 67,929 (Dep't of the Interior Nov. 13, 2013); Department Manual 105 DM 2 Organizational Chart.[3]

In 2013, Section 151.12 was revised to, among other things:

> Provide clarification and transparency to the process for issuing decisions by the Department, whether the decision is made by the Secretary, Assistant Secretary-Indian Affairs (AS-IA), or a Bureau of Indian Affairs (BIA) official;
> Ensure notice of a BIA official decision to acquire land into trust, and the right, if any, to file an administrative appeal of such decision by requiring written notice to all interested parties who have made themselves known in writing to the BIA official . . . .

78 Fed. Reg. at 67,929. The revised rule added new subsections (c) and (d), which were summarily described as housing certain requirements moved from subsections (a) and (b), such as prompt notification, notification of appeal rights, title examination, exhaustion of administrative remedies, and publication in the Federal Register. *Id.* at 67,930-67,931. The revisions also clarified the "different means and timelines for challenging decisions depending on whether the decision is issued by the AS-IA or a BIA official." *Id.* at 67,929. Accordingly, Section 151.12(c)—which is at the crux of the current dispute—provides the applicable

---

[3] Available at https://elips.doi.gov/ELIPS/0/doc/4233/Page1.aspx (last visited February 28, 2018).

procedures when the AS-IA issues a decision, whereas Section 151.12(d) provides the applicable

procedures when a BIA official issues a decision.  Under Section 151.12(c):

> A decision made by the Secretary, or the Assistant Secretary-Indian Affairs pursuant to delegated authority, is a final agency action under 5 U.S.C. 704 upon issuance.
> (1) If the Secretary or Assistant Secretary denies the request, the Assistant Secretary shall promptly provide the applicant with the decision.
> (2) If the Secretary or Assistant Secretary approves the request, the Assistant Secretary shall:
> (i) Promptly provide the applicant with the decision;
> (ii) Promptly publish in the Federal Register a notice of the decision to acquire land in trust under this part; and
> (iii) Immediately acquire the land in trust under § 151.14 on or after the date such decision is issued and upon fulfillment of the requirements of § 151.13 and any other Departmental requirements.

Therefore, a decision properly made under Section 151.12(c) is a final agency action and the AS-

IA may acquire the land in trust.  Under Section 151.12(d):

> A decision made by a Bureau of Indian Affairs official pursuant to delegated authority is not a final agency action of the Department under 5 U.S.C. 704 until administrative remedies are exhausted under part 2 of this chapter or until the time for filing a notice of appeal has expired and no administrative appeal has been filed.

(emphases added).  The addition of subsections (c) and (d) thus "makes explicit the requirement

that prior to seeking judicial review of a BIA official's decision, a party must first exhaust the

administrative remedies available under 25 C.F.R. part 2."  78 Fed. Reg. at 67,929.

Separate from, but in addition to its promulgated regulations, the Department has

established an internal Department Manual setting forth its operational procedures.[4]  The

Department Manual includes a series on the Secretary's delegation of authority pursuant to 5

U.S.C. § 302, which permits the head of the agency to "delegate to subordinate officials the

---

[4]  Available at https://elips.doi.gov/ELIPS/Browse.aspx (last visited February 28, 2018).

authority vested in him." *See* 5 U.S.C. § 302. Part 209, Chapter 8 sanctions the delegation of authority to the AS-IA. Section 8.1 provides that, subject to certain limitations not applicable here, the AS-IA "is authorized to exercise all of the authority of the Secretary," and Section 8.4 provides that the "Principal Deputy Assistant Secretary is delegated all program and administrative authorities of the [AS-IA] necessary to fulfill the responsibilities." Department Manual 209 DM 8 §§ 8.1, 8.4(A), ECF No. 33-1 Ex. H. The Principal Deputy Assistant Secretary is also the "first assistant and principal advisor" to the AS-IA. Department Manual 110 DM 8 § 8.2, ECF No. 33-1 Ex. H. The Department Manual further provides that in the absence of the AS-IA, the Principal Deputy Assistant Secretary is authorized to step into the AS-IA's shoes.[5] *See* Department Manual 209 DM 8 §§ 8.1, 8.4(B). In other words, the AS-IA is authorized to act on behalf of the Secretary, and the Principal Deputy Assistant Secretary has broad authority to act on behalf of his boss, the AS-IA, or in lieu of the AS-IA if the AS-IA's office is vacant. *See id.*

Last, the FVRA is Congress' practical response to the "problems that arise when our Constitution confronts the realities of practical governance," such as when the change in presidential administrations leaves vacant certain positions requiring appointment by the President and confirmation by the Senate (known as "PAS" positions). *See SW General, Inc. v. N.L.R.B.*, 796 F.3d 67, 69 (D.C. Cir. 2015); U.S. Const. art. II, § 2, cl. 2 (Appointments Clause). The FVRA's "default rule" is that the "first assistant" to the vacant PAS position automatically

---

[5] This includes all limitations on the AS-IA, with one further exception not applicable here: the Principal Deputy Assistant Secretary may not withdraw or reserve public lands under Section 204(a) of Public Law 94-579, otherwise known as the Federal Land Policy and Management Act of 1976 ("FLPMA"). Department Manual 209 DM 8 §§ 8.1(B); 8.4(B); Fed. Defs.' Mem. in Response to the Court's Request at Oral Arg., ECF No. 52. The land here is not public land as defined by the FLPMA. *See id.*

assumes the "functions and duties" of the office for up to 210 days as the "acting" PAS official. 5 U.S.C §§ 3345(a)(1), 3346(a)(1); *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 935 (2017). This includes any function or duty that is established by statute or regulation "to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2). After the 210 days elapse, should the PAS role continue to remain vacant, the FVRA, although silent on the issue, has been deemed to "permit[] non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency." Guidance on Application of Federal Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 72 (1999).[6] In the judgment of the Justice Department's Office of Legal Counsel, this reflects Congress' understanding that if all duties to be performed by the vacant PAS position had to be performed by the head of the agency, "the business of the government could be seriously impaired." *Id.*

### B. Count One: The Record of Decision Was Not *Ultra Vires* Action

The Plaintiffs first challenge the January 19, 2017 Record of Decision signed by Mr. Roberts, the Principal Deputy Assistant Secretary-Indian Affairs. The former AS-IA, Kevin Washburn, resigned from office effective midnight on December 31, 2015. Pls.' Mem. for Summary J. Ex. F. Pursuant to the FVRA and the Department Manual, Mr. Roberts, as the Principal Deputy Assistant Secretary and "first assistant" to the AS-IA, automatically became the Acting AS-IA. *See id*; 5 U.S.C. § 3345(a)(1); Department Manual 110 DM 8 § 8.2. Mr. Roberts served as the Acting AS-IA for 210 days (from January 1, 2016 to July 29, 2016) as permitted by the FVRA, and then reverted to his position as the Principal Deputy Assistant Secretary. Pls.'

---

[6] Available at https://www.justice.gov/olc/opinion/guidance-application-federal-vacancies-reform-act-1998 (last visited February 28, 2018).

Mem. for Summary J. 8; *id.* Ex. F; 5 U.S.C. § 3346(a)(1).  The AS-IA position then remained

vacant without a PAS officer in the role.[7]  Thus, at the time Mr. Roberts issued the Record of

Decision, his title was the Principal Deputy Assistant Secretary-Indian Affairs.  Mot. to Intervene

Ex. A at 2.

In short, the Plaintiffs argue that the Department's regulations permit only the Secretary

and the AS-IA, both PAS positions, to make final trust decisions.  *See* 25 C.F.R. § 151.12(c);

Pls.' Mem. for Summary J. 9.  It is undisputed that on January 19, 2017, Mr. Roberts was neither

appointed nor confirmed as the Secretary or AS-IA, nor was he the Acting AS-IA.  The Plaintiffs

allege that his decision therefore must be invalid.  *See id.* at 9-11.  The Plaintiffs further allege

that Mr. Roberts' purported exercise of authority to make a final fee-to-trust decision violated the

FVRA.  *Id.* at 17-20.

The Defendants counter that 25 C.F.R. § 151.12 is not so limited as the Plaintiffs' reading

and that at the time of the decision, Mr. Roberts was properly exercising the AS-IA's authority

pursuant to delegated authority by the Secretary as established in the Department Manual, which

did not violate the FVRA.  Fed. Defs.' Cross-Mot. for Summary J. 6; Tribe's Cross-Mot. for

Summary J. 8, ECF No. 41.  Because the authority to make a final fee-to-trust decision is non-

exclusive and therefore delegable, and the authority was properly delegated to the Principal

Deputy Assistant Secretary, I agree with the Defendants' position that Mr. Roberts exercised

authority consistent with Section 151.12(c) and the Department Manual, and that this was not in

contravention of the FVRA.

---

[7]  The role is still vacant as of January 9, 2018.  Tr. of Mot. Hr'g, 25, Jan. 9, 2018.

### 1. Section 151.12(c) Does Not Preclude Delegation to the Principal Deputy Assistant Secretary

The threshold question is whether 25 C.F.R. § 151.12(c) exclusively reserves final fee-to-trust decision-making in the Secretary and AS-IA alone, or whether the authority is delegable to others. For the authority to have been properly exercised by the Principal Deputy Assistant Secretary (a position within the AS-IA's office), standing in for the AS-IA, it must first be delegable. For multiple reasons, I find that it is.

*First*, 25 C.F.R. § 151.12(c) must be interpreted against a background presumption of delegability. As the D.C. Circuit has held, "[w]hen a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *U.S. Telecomm Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004).[8] Here, Congress delegated the authority to acquire land in trust for Indian tribes to the Secretary of the Interior. *See* 25 U.S.C. § 5108 ("The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase . . . any interest in lands . . . for the purpose of providing land for Indians. [] Title to any lands or rights acquired pursuant to this Act . . . shall be taken in the name of the United States in trust for the Indian tribe . . . ."). There is no indication from the statute that Congress intended to preclude subdelegation, and the Plaintiffs do not argue to the contrary. *See id.*; Reply Mem. in Supp. of Pls.' Mot. for Summary J. and in Opp. to Defs.' Cross-Mot. for Summary J. ("Pls.' Reply") 8, ECF No. 45.

---

[8] As the first-level delegation is from Congress to the agency, intra-agency delegations are subdelegations. In discussing intra-agency delegations in this opinion, I use the term "delegation," which should be understood as subdelegations.

This presumption is consistent with the landscape of statutes and regulations assigning functions and duties to the AS-IA, and indeed to other senior Executive Branch officials. In responding to an inquiry by the Secretary as to whether the duties of the AS-IA could be delegated in the event of a vacant position, the Department's Solicitor (its chief lawyer) advised that the only duties that could not be delegated are those established by statute or regulation as required to be performed by the AS-IA. Mem. from the Solicitor to the Sec'y of the Interior re Redelegation of Duties of the Assistant Secretary-Indian Affairs (Jan. 28, 2005), ECF No. 40-1; *see also* Guidance on Application of Federal Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 72 (1999) (advising that non-exclusive responsibilities may be delegated). In surveying Department statutes and regulations, the Solicitor identified only two statutes that seemed to limit delegation of the AS-IA's responsibilities (neither of which are relevant here), and did not identify any regulations that precluded delegation of the AS-IA's duties. Though the Solicitor's memorandum predates the promulgation of 25 C.F.R. § 151.12(c), it is nonetheless informative as to the then-existing status quo of the Department's regulations and further supports the general presumption of delegability.[9]

This presumption is applicable and not overcome by any "affirmative evidence" in this case. *See U.S. Telecomm*, 359 F.3d at 565. The plain text of the regulation does not reveal any affirmative language precluding delegation, such as "may only be delegated to," "may not [be] delegate[d]," "may not be reledegated," "shall not be redelegated," or is "not subject to

---

[9]  Both the Federal Defendants and the Tribe argue that the memorandum provides evidence of the Department's interpretation of its own regulations which should be afforded deference under *Auer v. Robbins*, 519 U.S. 452 (1997). Fed. Defs.' Cross-Mot. for Summary J. 23; Tribe's Cross-Mot. for Summary J. 17. But in light of the clear import of the regulation against the backdrop of the presumption of delegability and lack of affirmative evidence otherwise, I need not determine whether *Auer* deference is appropriate here and reference the memorandum solely to provide background on the dearth of Department regulations precluding delegation.

delegation." *See* 25 C.F.R. § 151.12; Tribe's Cross-Mot. for Summary J. 10-11.  These types of phrases have been invoked by Congress or the Secretary to clearly preclude delegation in other contexts.  *See, e.g.*, 25 U.S.C. § 2103(d) (governing minerals agreements); *id.* § 5117(b)(2) (governing demotion of certain BIA officials); *id.* § 2706(a) (exclusively vesting the Indian Gaming Commission with certain powers); 43 C.F.R. § 3191.2(b) (governing delegation by the Director regarding oil and gas leases); *id.* § 20.202(b)(1) (governing delegations of the Ethics Counselor on disciplinary or remedial actions).  Section 151.12, including subsections (c) and (d), is devoid of any similar language prohibiting the delegation of a fee-to-trust decision.  On the regulation's plain text, then, delegation by the Secretary to a subordinate other than the AS-IA—in this case, the Principal Deputy Assistant Secretary—seems "presumptively permissible." *See U.S. Telecomm Ass'n*, 359 F.3d at 565.

*Second*, the context and comments relating to the regulation about which the Plaintiffs complain do not suggest it is a delegation regulation.  While an agency is "bound by its own regulations," *Texas v. EPA*, 726 F.3d 180, 200 (D.C. Cir. 2013) (internal quotations and citations omitted), the regulation at issue here is not about the Secretary's ability to delegate, nor does it set forth the Secretary's delegation structure.  *See* 25 C.F.R. § 151.12 ("Action on requests"). The regulation exemplifies "a situation where [the creating entity] has 'mention[ed] a specific individual only to make it clear that this official has a particular power rather than to exclude delegation to other officials.'"  *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1033 (Fed. Cir. 2016) (quoting *United States v. Mango*, 199 F.3d 85, 90 (2d. Cir. 1999)).  Rather, the regulation describes, for the benefit of external parties, the Department's process of reviewing and taking action on acquisition requests.  *See id.*  Subsections (c) and (d), created during the 2013 revisions to Section 151.12, were promulgated in part to "[p]rovide clarification and

transparency to the process for issuing decisions by the Department, whether the decision is made by the Secretary, [the AS-IA], or a [BIA] official" and sought to clarify the distinctions of the "different means and timelines for challenging decisions" within "the context of trust acquisition decisions." 78 Fed. Reg. at 67,929. To that end, the revisions require the Department to provide notice of a BIA official's decision in order to enable parties to file an administrative appeal and make explicit that parties must exhaust administrative remedies before seeking judicial review. *See id.* This evidences an intent to clarify matters externally, not an intent to internally restrict delegation. *Cf. Ethicon Endo*, 812 F.3d at 1032-33.

This finding is supported by the Secretary's comments—or rather, the lack thereof—in the preamble to the final rulemaking.[10] None of the comments explicitly or implicitly address delegation. The portion of the preamble "detail[ing] all revisions this new rule would make to § 151.12" lacks any indication that delegation is an intended subject of the changes. *See id.* at 67,930-67,932. The revisions instead focus on when judicial review may occur by deleting a 30-day waiting period prior to seeking judicial review, providing notice of a BIA official's decision such that "[t]he time for unknown interested parties to file a notice of appeal begins to run upon the date of first publication of such newspaper notice," and clarifying that administrative review

---

[10]  Agency comments published in the Federal Register accompanying final rules suffer neither the well-documented defects of selective citations to legislative history nor the dangers of subsequent agency glosses on their own regulations. After all, while no one legislator or committee can speak authoritatively to Congressional intent, *see Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528 (1989) (Scalia, J., concurring), an agency head promulgating regulations can explicate his own intent in the accompanying regulation that he alone authorized. And contemporaneous statements are less susceptible to self-serving creativity than post-hoc glosses from agencies attempting to gild the lily in the midst of litigation. In the pantheon of aids to interpreting controlling text, therefore, Federal Register commentary is more helpful than most. *See also Wyoming Outdoor Council v. U.S. Forest Service*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("Although the preamble does not 'control' the meaning of the regulation, it may serve as a source of evidence concerning contemporaneous agency intent.").

of a BIA official's decision is unavailable if an interested party fails to exhaust administrative remedies. *Id.* at 67,929-67,930. The import of all of these changes—and the conspicuous absence of any substantive discussion in the preamble of Section 151.12(c) or (d), even though the revisions created those subsections—is that the revisions to Section 151.12 sought to clarify which decisions are final (*i.e.*, immediately judicially reviewable) versus non-final, and were not, as Plaintiffs suggest, promulgated to imbue the Secretary and the AS-IA with exclusive authority to issue final fee-to-trust decisions.

Moreover, reading Section 151.12(c)'s references to the "AS-IA" narrowly (*i.e.*, to mean the AS-IA and no one else) would lead to absurd results. *See Holy Trinity Church v. United States*, 143 U.S. 457, 460 ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity."). According to the regulation, if the Secretary or the AS-IA approves the fee-to-trust application, the AS-IA "shall

> (i) Promptly provide the applicant with the decision;
> (ii) Promptly publish in the Federal Register a notice of the decision to acquire land in trust under this part; and
> (iii) Immediately acquire the land in trust under § 151.14 on or after the date such decision is issued and upon fulfillment of the requirements of § 151.13 and any other Departmental requirements."

25 C.F.R. § 151.12(c) (emphasis added). But of course the AS-IA himself does not personally inform the applicant of his decision, publish a notice of the decision in the Federal Register, or acquire the land in trust. Rather, he explicitly or implicitly delegates these duties to others. Surely no one would contend that a fee-to-trust decision would be void if some administrator rather than the AS-IA himself published the requisite notice in the Federal Register or if the BIA acquired the land in trust at the direction of the AS-IA. If these administrative tasks—which by the strict language of the regulation are assigned to the AS-IA—can be delegated to others, then

it is hard to see why the Department cannot also re-delegate other responsibilities of the AS-IA that are discussed in the same subsection.

*Third*, while there do not appear to be any cases directly addressing the issue of whether the authority to issue final fee-to-trust decisions is exclusive, delegation case law more broadly is consistent with the AS-IA's authority being delegable in this instance. The Plaintiffs primarily rely on *Giordano v. United States*, in which the Supreme Court held that a provision providing that "(t)he Attorney General, or any Assistant Attorney General specially designated by the Attorney General" may authorize a wiretap application reserved the authority solely to those two individuals and did not permit further delegation. 416 U.S. 505, 513-14 (1974); Tr. of Mot. Hr'g 7. Significantly, the Plaintiffs assert, the statute was devoid of language explicitly preventing delegation, such as the terms "only" or "exclusively," which are also lacking in 25 C.F.R. § 151.12. *Id.* The differences between the circumstances in *Giordano* and those presented here, however, require a different outcome.

In *Giordano*, the Supreme Court examined the purpose of the legislation, which was to generally prohibit wire intercepts, and found that "Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint." 416 U.S. at 514-15. There, delegation appeared "wholly at odds with the scheme and history of the Act." *Id.* at 523. Here, the Secretary's 2013 rulemaking expressed no similar intent. To start, the statute in *Giordano* generally served to restrict an action, whereas Section 151.12 and its subsection (c) do not share the same overall goal to restrict. Rather than a prohibitive regulation, Section 151.12 is procedural in nature, describing how fee-to-trust application requests are actioned and setting forth the effects of those actions. Further, the Supreme Court in *Giordano* extensively analyzed

the statute's legislative history and identified specific instances where Congress intended "the authority to apply for court orders [] to be narrowly confined but also declare[d] that it is to be limited to those responsive to the political process." *Id.* at 520. Here, not only is there a fundamental difference in the nature of the regulation, but the Secretary's commentary around the rulemaking did not explicitly or implicitly approach the topic of delegation, much less display an intent that final fee-to-trust decisions should be an exclusive power. And, as explained above, Section 151.12 is neither a delegation regulation, nor can any of the Secretary's comments in promulgating the rulemaking be construed as such. *See id.* The "affirmative evidence of a contrary [] intent" is not present. *See U.S. Telecomm Ass'n*, 359 F.3d at 565.

The Second Circuit in *United States v. Mango* similarly distinguished *Giordano* based on these characteristics. 199 F.3d 85, 90-91 (2d Cir. 1999). In *Mango*, the Second Circuit found that the Clean Water Act's provision granting authority to issue certain permits to the "Secretary," defined as "the Secretary of the Army, acting through the Chief of Engineers," did not preclude delegation to others. *Id*. at 86-87. The Second Circuit found that even though the language at issue from the Clean Water Act "contains language somewhat similar to the wiretap statute," the absence of legislative history indicating that Congress considered and rejected subdelegation distinguished it from *Giordano. Id.* at 90-91. As with Section 151.12, the relevant provision of the Clean Water Act was not a specific delegation provision, and the scheme as a whole was not intended to forbid a certain action. *Mango*'s holding and reasoning is more akin to the circumstances presented by Section 151.12(c) than *Giordano*.

The Federal Circuit in *Ethicon Endo-Surgery* also analyzed whether there was clear congressional intent to prohibit subdelegation in the context of the America Invents Act. The statute provided that "[t]he Director shall . . . appoint such officers . . . as the Director considers

necessary, . . . and delegate to them such of the powers vested in the Office as the Director may determine." 812 F.3d at 1032-33. The appellant argued that this provision precluded the Director from delegating authority to individuals that the Director did not appoint. *Id.* at 1033. The court disagreed, describing this provision as "not primarily a delegation provision" and instead as a "source of authority" for the Director's appointments. *Id.* at 1033. In both *Ethicon Endo* and *Mango*, the courts explained that "Congress may mention a specific official only to make it clear that this official has a particular power rather than to exclude delegation to other officials." *Id.*; 199 F.3d at 90 (citing *Shook v. District of Columbia Financial Responsibility and Management Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998)). Applying these principles to this matter leads to the conclusion that Section 151.12(c) is not intended to preclude the Secretary's authority to delegate to others, and that delegation to the AS-IA is one such, but not the only, permissible delegation.

The Defendants' reading also finds support among the few district court cases that have faced analogous issues. In *Schaghticoke Tribal Nation v. Kempthorne*, both the AS-IA and Principal Assistant Deputy Secretary positions became vacant, and thus, there was no "first assistant" to become Acting AS-IA. F. Supp. 2d 389, 420 (D. Conn. 2008). The Secretary delegated the non-exclusive duties of the AS-IA to an Associate Deputy Secretary. *Id.* The court examined the applicable statutes and regulations—in that case, pertaining to tribal acknowledgements—and found that the relevant statutes did not assign the function "exclusively" or "only" to the AS-IA, and that the relevant regulations similarly did not seem to preclude delegation of the AS-IA's duties. *Id.* at 420-21. In *Sokaogon Chippewa Community v. Babbitt*, the court analyzed the scenario where the AS-IA was recused and delegated his authority to make a final fee-to-trust decision to the Deputy Assistant Secretary-Indian Affairs.

929 F. Supp. 1165, 1182 (W.D. Wis. 1996).  The court held that the AS-IA's delegation of authority was proper as the Department Manual provided for delegations "[i]n the absence of, or under conditions specified by, the [AS-IA]," and that this recusal fell into the latter category.  *Id.* Accordingly, the decision was final for the department.  While these cases involved different statutes and regulations and predated the current form of Section 151.12 and the Department Manual, their reasoning remains persuasive and promotes the Defendants' reading.

*     *     *

The Plaintiffs' counterarguments are unavailing as they all misunderstand or misread 25 C.F.R. § 151.12(c).  To counter the presumption of delegability, the Plaintiffs assert that the Secretary's purported intention to limit delegation of trust decision-making authority controls instead.  Pls.' Reply 8-9.  The Plaintiffs look to the text of the regulation, look to the Secretary's comments in the preamble to the final rulemaking, and invoke legal maxims to support their position.  None of these sources, however, compels the Plaintiffs' conclusion.

The Plaintiffs claim that the regulation's text is clear that the only three roles that may make fee-to-trust decisions are the Secretary, "the [AS-IA] pursuant to delegated authority," or a "[BIA] official pursuant to delegated authority" and that "magic words" are not necessary to evidence the Secretary's intent to preclude delegation.   *See* 25 C.F.R. § 151.12(c)-(d); Pls.' Reply 5; Tr. of Mot. Hr'g 6.  Although the Plaintiffs' assertion may be possible as a general matter, that scenario is not presented here.  It is evident from review of the 2013 revisions to Section 151.12 that subsections (c) and (d) were promulgated not to restrict who may make trust decisions, but to distinguish between final and non-final agency action and provide external guidance as to when agency decisions must be administratively exhausted versus being immediately judicially reviewable.  *See supra* Part III.A.; *see also* 78 Fed. Reg. at 67,929.

The Plaintiffs emphasize a portion of the preamble under the heading "Who the Decision Maker Should Be," and contend that the response to one comment evidences a "reject[ion of] a proposal for having the Deputy Assistant Secretary decide all the trust applications the Assistant Secretary normally would decide to allow for administrative appeal." Pls.' Mem. for Summary J. 10. This misreads the response. In addressing the suggestion, the Secretary explained that the "*AS-IA* retains the discretion to issue a decision *or assign responsibility* to a Deputy Assistant Secretary to issue the decision under 25 U.S.C. 2.20(c) [governing appeals before the Interior Board of Indian Appeals]." 78 Fed. Reg. at 67,934 (emphases added). This response focuses on the AS-IA's authority and an instance where the AS-IA may delegate it, and is not a discussion of the Secretary's intention to constrain his authority on final fee-to-trust decisions.

To the extent the Plaintiffs turn to the preamble for support, the more informative cross-reference supports the Defendants' reading. In providing background to the rulemaking, the Secretary explained, "[i]f the AS-IA issues the decision under this part, the decision is a 'final agency determination,' and the decision is final for the Department. *See* 25 C.F.R. 2.6(c). A party may then seek judicial review of this decision under the APA." *Id.* at 67,929. The citation to 25 C.F.R. § 2.6, "Finality of decisions," which was promulgated prior to the 2013 revisions to Section 151.12, is informative because it specifies that decisions by BIA officials become effective when the time for filing a notice of appeal has expired and no notice of appeal has been filed, but that decisions by the AS-IA are final and effective immediately. *See* 25 C.F.R. § 2.6(b)-(c). This provision may sound familiar because it is the same setup that Section 151.12 implemented, indicating that the 2013 revisions to 25 C.F.R. § 151.12 sought to mirror the previously established dichotomy between decisions of BIA officials (not judicially reviewable

without administrative exhaustion) and the AS-IA (immediately judicially reviewable as final agency action).[11]

The Plaintiffs also urge application of the legal maxim *expressio unius est exclusio alterius* and the canon against superfluity. The Plaintiffs highlight the fact that the former version of Section 151.12 only referred to the Secretary, whereas the 2013 revisions introduced the "[AS-IA] pursuant to delegated authority" as an authorized final fee-to-trust decision-maker. Pls.' Mem. for Summary J. 8. According to the Plaintiffs, the Secretary's addition of this phrase necessarily means that: (i) all other roles—including the Principal Deputy Assistant Secretary— are excluded (*expressio unius*), *see* Pls.' Reply 5-6; and that (ii) the Defendants' reading renders the phrase "the [AS-IA] pursuant to delegated authority" superfluous because the Secretary is already defined as the "Secretary of the Interior or authorized representative." *Id.* at 7-8.

Even assuming that the canons of *expressio unius* and against superfluity apply with the same force in interpreting regulations as they do with statutes,[12] neither provides affirmative evidence that the Secretary intended the fee-to-trust decision-making authority to be exclusive.

---

[11] Section 2.6 has also been consistently interpreted by the Interior Board of Indian Appeals to permit delegation of the AS-IA's non-exclusive duties. *See Forest County Potawatomi Community v. Deputy Assistant Secretary-Indian Affairs*, 48 IBIA 259 (2009) (holding that a decision by the Associate Deputy Secretary acting pursuant to delegated authority by the AS-IA, is final); *Ramah Navajo Chapter v. Deputy Assistant Sec'y for Policy and Economic Development-Indian Affairs*, 49 IBIA 10 (2009) (finding proper delegation of the AS-IA's duties). To the extent that Section 2.6 informed the structure and intent of Section 151.12, these cases corroborate the Defendants' reading that the AS-IA's non-exclusive decision-making authority under Section 151.12 may be delegated.

[12] The case law that the parties cite addressing basic interpretive principles primarily involve statutes. At oral argument, Plaintiffs and the Department stated that the basic principles and canons of statutory interpretation can generally be equally applied to regulations. Tr. of Mot. Hr'g 12-12, 23-24. I note, however, that at least one canon may have less force in an administrative setting. *See Van Hollen, Jr. v. Fed. Election Comm'n*, 811 F.3d 486, 493 (D.C. Cir. 2016) ("The *expressio unius* canon operates differently in our review of agency action than it does when we are directly interpreting a statute.").

The significance that Plaintiffs ascribe to the 2013 modifications is prejudiced by their overemphasis on the finality/non-finality of the action. As previously explained, the overall purpose of the 2013 revisions focused on which trust decisions are subject to judicial review, and when they become so subject. This necessarily implicates finality insofar as that only final decisions are immediately reviewable, but the greater context of the 2013 revisions indicates that the Secretary sought to clarify the applicable procedures and timelines for challenging agency action. *See* 78 Fed. Reg. at 67,929. To that end, the revisions added subsections (c) and (d), deleted a 30-day waiting period for final decisions, required BIA officials' decisions to be published, and reiterated that BIA officials' decisions must be internally administratively appealed before becoming judicially reviewable. *Id.* at 67,929-67,930. This broader context shows an emphasis on a decision's impact on the procedures to follow after a decision is rendered. Thus, while Plaintiffs stress that the final nature of the decision informs who should be making the decision (*i.e.*, only the Secretary or the AS-IA), the opposite is true: Section 151.12 clarifies that it is the decision-maker (*i.e.*, the Secretary, his authorized representative, the AS-IA, an individual acting for the AS-IA under delegated authority, or a BIA official) who drives whether the decision is final. When appropriately understood in this light, Section 151.12(c)'s phrase "[AS-IA] pursuant to delegated authority" works to clarify that decisions made by the AS-IA, or those that have properly stepped into his shoes, are final, but that decisions made at the BIA-level are not. Consequently, the 2013 revisions do not evidence intent to make the authority exclusive, and the Plaintiffs' use of interpretive canons does not prove otherwise.[13]

---

[13] The Plaintiffs' constitutional argument similarly fails due to overemphasis on the finality of the action. The Plaintiffs argue that the Appointments Clause "does not permit such significant power [of taking land into trust] to be vested in an inferior officer," but their accurate admission that the Principal Deputy Assistant Secretary is an inferior officer defeats their argument. *See* Pls.' Mem. for Summary J. 15. Constitutional limitations on the scope of Executive Branch

Understanding the "[AS-IA] pursuant to delegated authority" as someone who is properly carrying out the AS-IA's delegated authority further comports with the background and purpose of the 2013 amendments, and particularly the acknowledgement that the "vast majority of trust acquisition decisions are delegated to and issued by BIA officials." *Id.* at 67,929. Because decisions by the Assistant Secretary's office typically go through several layers of review before issuance, *id.*, it is consistent to establish a scheme that, in one subsection, addresses decisions that are final; and in another subsection, sets apart the procedures following a decision at the BIA-level, a subordinate agency under the AS-IA's office, and clarifies that those decisions are not final and must be administratively appealed. *See* 25 U.S.C. § 151.12(d); Department Manual 105 DM 2 Organizational Chart.

## 2. The Authority to Make Final Fee-to-Trust Decisions Was Properly Delegated to Mr. Roberts

Having established that the authority to make final fee-to-trust decisions is non-exclusive, I next must determine whether the authority was properly delegated to Mr. Roberts. I conclude that it was.

The Department Manual Part 209, Chapter 8 concerns the office of the AS-IA, including delegation to the AS-IA. As the Plaintiffs themselves recognize, in Section 8.1, the AS-IA is delegated the authority to "exercise all of the authority of the Secretary," with one limitation not relevant here. Department Manual 209 DM 8 § 8.1; Pls.' Mem. for Summary J. 16. Chapter 8

---

employee authority has focused on the line between officer and nonofficer, not principal and inferior officer. *See Edmond v. United States*, 520 U.S. 651, 662 (1997). In any event, the Principal Deputy Assistant Secretary is subject to supervision by the Deputy Secretary and ultimately, the Secretary. Department Manual 105 DM 2 Organizational Chart; *id.* 110 DM 8 Organizational Chart.

also describes the role and duties of the Principal Deputy Assistant Secretary, who, "[i]n the absence of [the AS-IA] . . . may exercise the authority delegated in [Section 8.1 to the AS-IA]," with one limitation not relevant here. *Id.*; Department Manual 209 DM 8 § 8.4(B).

On January 19, 2017, Mr. Roberts' term as the Acting Secretary pursuant to the FVRA had expired, and he was the Principal Deputy Assistant Secretary. The AS-IA position remained vacant, with no acting or confirmed officer in the role. Thus, Mr. Roberts, as the Principal Deputy Assistant Secretary, was authorized to exercise the AS-IA's non-exclusive authority, including the authority to make final fee-to-trust decisions. The Plaintiffs' arguments to the contrary are mistaken. The Plaintiffs primarily challenge the Department Manual as incapable of "displac[ing] the contrary provisions of Section 151.12(c)," which the Plaintiffs proffered as mandating final fee-to-trust decisions only to the Secretary or AS-IA. Pls.' Mem. for Summary J. 17. As I previously addressed that argument, and have now explained that Mr. Roberts' authority properly flowed pursuant to the Department Manual, it is clear that the January 19, 2017 Record of Decision was final.[14]

---

[14] The Plaintiffs also challenge Mr. Roberts' authority based on several technical aspects of the Department Manual. Pls.' Mem. for Summary J. 16-17. However, the provisions that the Plaintiffs take issue with, Section 8.3 of Part 209, and Section 2.5 of Part 302, pertain to the AS-IA's authority to redelegate, and to delegations of authority to PAS successors. *See* Department Manual 209 DM 8 § 8.3; *id.* 302 DM 2 § 2.5. Neither section is applicable here, as Mr. Roberts, in his role as the Principal Deputy Assistant Secretary, stepped into the shoes of the AS-IA to exercise the AS-IA's non-exclusive authority to make final fee-to-trust decisions. As this authority is clear from the Department Manual, I need not consider whether the Deputy Secretary's letter of January 19, 2017 independently authorized Mr. Roberts' actions. *See* Pls.' Mem. for Summary J. Ex. I, ECF No. 33-1.

### 3. Mr. Roberts' Exercise of the Non-Exclusive Authority to Make Final Fee-to-Trust Decisions Did Not Violate the FVRA

Mr. Roberts' action did not violate the FVRA. Under the FVRA, the "first assistant" to a vacant PAS position automatically assumes the "functions and duties" of that office for up to 210 days. 5 U.S.C. §§ 3345(a)(1), 3346(a)(1). These "functions and duties" encompass all of the obligations associated with that office, including any that are "required by [regulation or statute] to be performed by the applicable officer (and only that officer)." *Id.* § 3348(a)(2). In other words, during the 210-day period, the Acting officer may exercise duties both exclusive and non-exclusive to that office. After the 210-day period, in the continued absence of a PAS, the FVRA "permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency." Guidance on Application of Federal Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 72 (1999); *see also Schaghticoke Tribal Nation v. Kempthorne*, F. Supp. 2d 389, 420 (D. Conn. 2008) ("Accordingly, any functions or duties not required by statute or regulation to be performed by the official occupying that position may be reassigned to another official within the agency or department.").

Accordingly, Mr. Roberts was empowered, as the Acting AS-IA, to exercise the AS-IA's exclusive and non-exclusive duties between January 1, 2016 and July 29, 2016. *See* Pls.' Mem. for Summary J. 8. After that period, and on January 19, 2017, Mr. Roberts was empowered, as the Principal Deputy Assistant Secretary, to perform the AS-IA's non-exclusive duties, such as the authority to issue final fee-to-trust decisions. This was, as explained in Part III.B.2, pursuant to appropriately delegated authority, and does not violate the FVRA.[15]

---

[15] As Mr. Roberts' decision was properly made, I need not address whether Mr. Black's subsequent actions ratified it. As Plaintiffs explain, the FVRA prohibits post-hoc ratification. Pls.' Reply 12 (citing 5 U.S.C. § 3348(d)(2)). But since Mr. Roberts exercised non-exclusive

## C.  Count Two: Mr. Black's Actions Were Not *Ultra Vires*

Plaintiffs' secondary challenge is to Mr. Black's decisions to acquire title in trust for the Tribe (February 10, 2017), assume jurisdiction over the Plaintiffs' internal administrative appeal (March 7, 2017), and dismiss the appeal (July 13, 2017) as violations of agency regulations and the FVRA.  Am. Compl. ¶ 82.  Mr. Black is the Special Assistant to the Director of the BIA.  *Id.* at 80; Fed. Defs. Answer to Pls.' Am. Compl. ¶ 80.

On January 19, 2017, then-Secretary of the Interior Sally Jewell issued an order "temporarily redelegating authority" for certain PAS positions effective at noon Eastern Standard Time on January 20, 2017.  Pls.' Mem. for Summary J. Ex. G §§ 1, 5.  The order delegated Mr. Black the non-exclusive functions and duties of the AS-IA.  *Id.* §§ 3-4.[16]  This defeats the Plaintiffs' challenge to Mr. Black's February 10, 2017 decision to acquire title in trust for the Tribe, as Mr. Black was performing the duties of the AS-IA under 25 C.F.R. § 151.12(c)(2)(iii).

The Plaintiffs' argument that the responsibility to take land into trust is exclusive to the AS-IA (and therefore not delegable) is unavailing because there is no positive indication that this was intended to be an exclusive duty.  Indeed, the Plaintiffs do not offer any evidence to support this claim.  *See* Pls.' Mem. for Summary J. 19.  To the contrary, there is evidence that taking land into trust is non-exclusive, as a BIA official may "immediately acquire the land in trust" upon the satisfaction of certain temporal or administrative requirements.  25 C.F.R. § 151(d)(2)(iv).  That the BIA official has to wait longer to take the land into trust does not

---

authority that did not violate the FVRA as an initial matter, this argument does not advance their position.

[16]  This order superseded Mr. Roberts' assumption of the non-exclusive responsibilities of the AS-IA pursuant to Department Manual Part 209, Chapter 8, because Chapter 8 is "subject to the limitations in" Department Manual Part 200 Chapter 1, Delegation of Authority by the Secretary of the Interior.

diminish the fact that it is a non-exclusive power. As the authority was delegable, and properly delegated to Mr. Black, he was authorized to take the land into trust.

With respect to the Plaintiffs' complaint of Mr. Black's assumption of jurisdiction and subsequent dismissal of the appeal, this issue is moot because the January 19, 2017 Record of Decision was final when it was issued by Mr. Roberts. *See supra* Part III.B.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for summary judgment will be denied, and the Defendants' and Intervenor's motions for summary judgment will be granted. A separate order will issue.

Dated: February 28, 2018

TREVOR N. MCFADDEN
United States District Judge