# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STAND UP FOR CALIFORNIA!, PATTY JOHNSON, JOE TEIXEIRA, and LYNN WHEAT**, | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-00058 (TNM) |
| **UNITED STATES DEPARTMENT OF INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; and JOHN TAHSUDA III, in his official capacity as Acting Assistant Secretary-Indian Affairs,** | |
| Defendants, | |
| and | |
| **WILTON RANCHERIA, CALIFORNIA** | |
| Intervenor-Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Stand Up for California!, Patty Johnson, Joe Teixeira, and Lynn Wheat challenge the adequacy of the administrative record for judicial review of the Department of Interior's decision to approve acquiring land in trust for the Wilton Rancheria tribe and seek discovery in the form of a privilege log from the Department. Specifically, the Plaintiffs dispute excluding a variety of documents from the administrative record, claim that some attachments to emails otherwise included in the administrative record are missing, and seek to unredact header information (*e.g.*, authors, recipients, transmission time, subject) of emails in the record. The Plaintiffs also argue that the Department improperly "predetermined the outcome" of the Wilton

Rancheria's application and that this, coupled with other indicia of bad faith—a rushed review process, culminating in a decision issued on the eve of the change in Presidential Administrations; pressure from the Senate Minority Leader; and the Department's representation to another judge of this District that the timing of any decision was uncertain yet issuing a decision days later—warrants the production of a privilege log.

The Court finds that none of the three narrow "unusual circumstances" apply here to require supplementing the administrative record, *see Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015), but that the combination of facts marshalled by the Plaintiffs present a *prima facie* case of bad faith to warrant production of a privilege log. *See Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011). Accordingly, the Plaintiffs' motion to supplement the administrative record will denied and their motion for discovery will be granted.

## I. BACKGROUND

The Wilton Rancheria (the "Tribe") is a federally recognized Indian Tribe that has been landless since 1958. Am. Compl. ¶¶ 14, 28. In 2013, the Tribe applied to the Bureau of Indian Affairs ("BIA") to acquire land in trust on its behalf for a casino and proposed a 282-acre plot near Galt, California. *Id.* ¶ 31; *see also* 25 U.S.C. § 5108 (authorizing the Secretary of the Interior to acquire land in trust for Indian tribes or individuals). The BIA vetted the proposal, including holding a public scoping meeting on the Environmental Impact Statement ("EIS") in December 2013, issuing an EIS Scoping Report in February 2014, and publishing a Notice of Availability of the Draft EIS in December 2015. Am. Compl. ¶¶ 32-34. All of these procedures, completed over a two-year period, were conducted on the proposed Galt site. *Id.*

Following the 2016 Presidential election, the Department completed procedures to take land into trust for the Tribe, but for an entirely different parcel of land in Elk Grove, California. *See id.* ¶ 38. In mid-November 2016, the BIA issued a Notice of (Gaming) Land Application for the Elk Grove land and in mid-December 2016, published a Notice of Availability for the Final EIS that identified a 36-acre parcel in Elk Grove. *Id.* The Plaintiffs, residents of Elk Grove and a non-profit organization supporting their efforts, allege that this was the first time over the years-long process that BIA identified this site. *Id.*[1] The Plaintiffs quickly and repeatedly—on December 29, 2016 and January 6, 2017—requested that the Department delay the acquisition of the Elk Grove site, but the Department refused to accede to the request. *See* Fed. Defs. Answer to Pls.' Am. Compl. ("Fed. Defs. Answer") ¶ 40.

Having struck out with the Department, the Plaintiffs turned to the judicial system and, on January 11, 2017, filed in this District a motion for an emergency temporary restraining order against acquiring title to the land. Am. Compl. ¶ 41. One of my colleagues heard arguments and denied the motion on January 13, 2017. Minute Entry, Jan. 13, 2017; *see also* TRO Hr'g Tr., Jan. 13, 2017, ECF No. 25. During the hearing, the District Judge asked the Department about the anticipated timing of the decision, and the Department replied that there was "still some uncertainty left" to the timing of the process, and that one of the factors affecting the timing would be addressing the public comments received. *Id.* 37:9-25. The Department represented that the earliest date the land could be taken into trust was January 17, 2017, the same date as the close of the final public comment period. *Id.*

---

[1] The Tribe may have publicly announced their interest in the Elk Grove site in June 2016, but the Plaintiffs allege that a request to the BIA to prepare a supplemental EIS addressing the site change was unanswered. *Id.* ¶ 37.

On that day, the Plaintiffs applied to the Department for a formal stay of proceedings under 5 U.S.C. § 705. Fed. Defs. Answer ¶ 43. The Department did not deny the request until February 10, 2017, but by then, the Department had issued a Record of Decision approving the Tribe's trust application. *Id.* ¶ 46; Am. Compl. ¶¶ 53-55. The Record of Decision was issued on January 19, 2017, the last day of the Obama Administration and a little over two months after the BIA first allegedly identified the Elk Grove land. *See* Am. Compl. ¶¶ 38, 45. After exhausting their administrative appeal, the Plaintiffs returned to this Court to challenge the authority of the individuals who signed the January 19, 2017 Record of Decision and a February 10, 2017 decision to acquire title in trust for the Tribe. *Id.* ¶¶ 70, 82. I denied the Plaintiffs' partial motion for summary judgment and granted the Department's and the Tribe's partial motions for summary judgment, finding that the authority of the Assistant Secretary-Indian Affairs was properly delegated and that the Department acted consistent with applicable regulations and the Federal Vacancies Reform Act. Mem. Op., Feb. 28, 2018, ECF No. 53. The agency proceeded to compile the administrative record for the remaining counts, leading to current dispute.

## II.    LEGAL STANDARDS

### A.  Supplementing the Administrative Record

Judicial review under the Administrative Procedure Act requires courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "whole record" includes the "full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). This includes all information that the agency considered either directly or indirectly. *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). It does not, however, include deliberative intra-agency

documents, which are ordinarily privileged. *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001).

Courts start with a presumption that the agency properly compiled the administrative record. *Id.* at 12. Thus, parties generally are not permitted to supplement the record except in certain "unusual circumstances." *Dist. Hosp. Partners*, 786 F.3d 46, 55 (internal quotation marks omitted). These unusual circumstances are "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Id.* A plaintiff must provide "concrete evidence" and "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Marcum*, 751 F. Supp. 2d at 78.

### B. Extra-Record Discovery

Discovery is generally unavailable in cases involving judicial review under the APA. *Air Transp. Ass'n of Am., Inc.*, 663 F.3d at 487 (D.C. Cir. 2011). Limited discovery may be granted when a "party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession of bad faith or an incomplete record." *Id.* at 487. Strong evidence of "unalterably closed minds" justifies discovery into the agency's decision-making process. *Id.* at 488.

# III. ANALYSIS

The Plaintiffs dispute the Department's decision to exclude a litany of documents from the administrative record, challenge the Department's redactions and decision to withhold other documents, and claim that because there is evidence of improper agency behavior, the Court should order the production of a privilege log so that Plaintiffs may object to any potentially improper assertion of privilege. Mot. to Complete and/or Supplement the Administrative R. and for Leave to Conduct Disc. ("Mot. to Supplement") 1-2, ECF No. 57. Each is detailed below.

## A. Beyond the Documents Conceded by the Department, the Plaintiffs Have Not Made the Required Showing to Supplement the Administrative Record

The Plaintiffs seek to supplement the administrative record with various documents: (i) the Draft Environmental Impact Statement ("DEIS"); (ii) various technical documents referenced in the DEIS; (iii) a Departmental guidance document about trust acquisitions; (iv) internal emails about the role of the Principal Deputy Assistant Secretary-Indian Affairs, Lawrence Roberts, that were mentioned during this Court's motions hearing on January 9, 2018; (v) a March 6, 2017 memorandum from the Sacramento County Water Agency to the County of Sacramento addressing the availability of water supplies in the local service area; and (vi) various procedural documents (*e.g.*, publication notices) for the January 19, 2017 Record of Decision. *Id*. at 7-8, 11.[2] The Plaintiffs also claim that attachments and parent emails to certain emails are missing, *id.* at 9-11, and that the administrative record is deficient because all relevant fileholders have not been searched. *Id.* at 13-16. Because ordering an agency to supplement the record of its decision would be a "rare bird," and the Plaintiffs have not sufficiently shown that

---

[2] Some of these documents are only mentioned in a single footnote. *See id.* at 8 n.3.

any "unusual circumstances" exist to warrant this extraordinary remedy, the Court finds that supplementation beyond the documents that the Department has conceded is not warranted. *See Dist. Hosp. Partners*, 786 F.3d at 55; *Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009).

The Department agrees to add the DEIS to the record. Fed. Defs.' Response Mem. in Opp. to Pl.'s Mot. to Supplement ("Fed. Defs.' Response") 8, ECF No. 60.[3] As for the documents incorporated by reference in the DEIS, the Department responds that these documents are "a reference" and that it is neither departmental practice nor statutorily required to include all documents incorporated by reference in the administrative record. *Id.* at 6-7. This is because information may be presented either in the body of the EIS, its appendices, or incorporated by reference. *Id.* at 5-6. It follows, then, that the body of the EIS contains core information relevant to the decisionmaker and the public; the appendices are for lengthier, technical material; and documents incorporated by reference are tertiary material. *See id.* The Plaintiffs argue that these documents are "important to Plaintiffs' case" and are "adverse information" to the Department's decision, particularly about the water supply for the casino. Pls.' Reply in Supp. of Mot. to Supplement ("Pls.' Reply") 6, ECF No. 61; *see also id.* at 7-8 (discussing public safety-related documents and environmental analyses). But the Plaintiffs have not sufficiently shown that these documents were excluded "deliberately or negligently" or that these documents provide "background information in order to determine whether the agency considered all of the relevant factors." *See Dist. Hosp. Partners*, 786 F.3d at 55. Without more, the Plaintiffs' mere assertion

---

[3] The Department has also electronically provided to the Plaintiffs four spreadsheets of data about wastewater and a Draft EIS notice. Pls.' Reply 2.

that these documents "are obviously important to the decision" do not warrant supplementing the record.  *See* Pls.' Reply at 5.

With respect to the Departmental guidance document on trust acquisitions dated January 5, 2017, the Department contends that guidance documents are not part of the administrative record.  Fed. Defs.' Response 8 n.3.  The Court agrees; guidance documents are not substantive information underlying the challenged decision and therefore is not information considered by the agency in its decision.  As the Department points out, though, this does not preclude the Plaintiffs from citing relevant excerpts from it in their merits briefing.

The Department challenges the Plaintiffs' characterization of the emails mentioned during the January 9, 2018 motions hearing and instead describe the emails as about whether the agency's decision was executed before or after a memorandum about the delegation of authority was issued.  *Id.*  Regardless of how the emails are characterized, they need not be added to the administrative record because the Court has already issued its opinion on the delegation of authority issue.  *See* Mem. Op., Feb. 28, 2018.  The Plaintiffs do not contend that the emails contain information adverse to its decision, speak to background information on the agency's failure to consider a relevant factor, or that the lack of these emails frustrate judicial review.  *See* *Dist. Hosp. Partners*, 786 F.3d at 55.

As the Department observes, the March 6, 2017 memorandum from the Sacramento County Water Agency to the County of Sacramento post-dates the agency's decision by nearly two months; as such, it could not have been before the agency at the time of the decision.  The Plaintiffs posit that the memorandum addresses the availability of water supplies in the local service area and exclusion of the document would frustrate judicial review.  Mot. to Supplement 8 n.3.  The Plaintiffs have not met the high bar to show that the record should be supplemented

with this document.  If it is true, as the Plaintiffs allege, that multiple commenters raised the

issue of water supplies during the comment period, it is important that the Department's alleged

failure to address adequately these comments be based on information before the agency when it

made its decision.  Holding the agency accountable for information unavailable to it at the time

of its decision—when the Plaintiffs have not alleged that the Department in fact had notice of

this document—would be incongruous with the fundamental tenets of judicial review.

The Plaintiffs fault the Department for "appear[ing]" to exclude certain procedural

documents, such as publication notices for scoping, the availability of the DEIS, and various

notices of intent.  *Id.* at 11.  To the Plaintiffs, these supposed documents are relevant and

important to "confirm that an agency has complied with various procedural requirements, as well

as internal review requirements."  *Id.*  But the Department has included in the record "[a]ll such

documents that can be located."  Fed. Defs.' Response 11.  The Department is entitled to a

presumption that it properly compiled the record, and the Plaintiffs' speculation that other

documents may exist is not an "unusual circumstance[]" warranting supplementing the record.

In any event, the Department avers that it has no further documents of this type to include.  *Id.*

The Plaintiffs also complain that some emails in the record are missing their attachment

or that some documents in the record are missing their cover email.  Mot. to Supplement 9-11.

In response to the Plaintiffs' concerns, the Department provided a list of the emails with their

corresponding produced attachments and Bates numbers.  Fed. Defs.' Response 9.  The

Department explains that the "missing" emails fall into four categories: (1) there was no

attachment in the first place; (2) the attachment has been produced; (3) the attachment was

withheld or is not part of the record; or (4) some combination thereof.  *Id.* at 9-10.  The Plaintiffs

have not alleged circumstances suggesting that these explanations are insufficient as to require supplementing the record.

Last, the Plaintiffs argue that the administrative record is incomplete because it does not include certain documents, like conference call invitations for each Department employee who received one, and that the Department therefore must not have searched all relevant fileholders for documents. Mot. to Supplement 13-16. The Plaintiffs also claim that it is "highly implausible" that other documents (*e.g.*, agendas, notes, minutes) were not created relating to these conference calls, and their absence means that the record is insufficient. *Id.* at 14. But these claims are speculative and do not overcome the presumption that the agency properly compiled the record.

### B. Plaintiffs Have Made a *Prima Facie* Showing of Bad Faith

Though the Plaintiffs fail to make a showing to warrant supplementing the administrative record, they have made a *prima facie* showing of bad faith to warrant limited discovery—here, the production of a privilege log to facilitate review of the Defendants' assertion of privilege. Courts in this District routinely deny requests for privilege logs of documents withheld from the record absent a showing of bad faith or improper behavior. *Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 122, 124 (D.D.C. 2014) (citing cases and holding that plaintiffs, in a challenge to a 2011 decision, had not met their burden to establish bad faith). And though the production of a privilege log in an APA case is "'the exception, not the rule,'" the unique and likely rare combination of circumstances leading to the January 19, 2017 Record of Decision warrant it in this case. *See id.* at 123. These circumstances—each of which is not dispositive standing alone, but all together establish a *prima facie* case—include the clearly hurried review process, the documented effort to issue the decision before the change in

Presidential Administrations, the disparity between the Department's representation to the District Judge at the January 13, 2017 hearing about "uncertainty" in the timeline contrasted against issuing the decision not even a week later, and political pressure from the Senate Committee on Indian Affairs.

The overall timeline of events, culminating in the January 19, 2017 decision, exemplifies the rushed review process. The Tribe applied for land in 2013, which remained pending for nearly three years before the Department began procedures to take into trust the current disputed land in Elk Grove. During those three years, the Department held public meetings and performed an environmental analysis on the land in Galt, California as identified by the Tribe in its initial application. It was not until November 2016—after the Presidential election and after it became clear that a different political party would control the Executive Branch—that the Department "shifted into warp speed" to approve the application for the Elk Grove site. *See* Mem. Op. at 3. Within two months, the Department completed the decision-making process for taking the Elk Grove land into trust—a process that was incomplete after three years for the Galt site—and issued the decision on the last day of the outgoing Presidential Administration.

Though the Department responds that these "hectic" events do not indicate a pre-judged or bad faith decision, the Department does not dispute that it sought to issue a decision before the change in Administration and calculated a timeframe to achieve that desired outcome. *See* Fed. Defs.' Response 18-19 (noting that, to make the January 19, 2017 cut-off, the Department had to "publish a notice of availability in the Federal Register in time to allow for a thirty-day public comment period to run."); TRO Hr'g Tr., Jan. 13, 2017, 37:13-15 (counsel for the Department stating that the comment period closes January 17, 2017). Throughout the two-month period, the Department was under continuous pressure—from the Tribe and the Senate Committee on Indian

Affairs—to ensure that the decision issued before the Administration change.  *See, e.g.,* WR_AR0005814 (email on December 7, 2016 to Lawrence Roberts stating that the Chairman of the Tribe called about his concern that "i[t] may not be complete by 1/19/17.").  Emails on December 6 and December 7, 2016 show that the Senate Committee on Indian Affairs was keeping a close eye on the timeline, including that "Senator Reid will need to get involved soon" if they did not receive an update that day.  WR_AR0005636.  At the time, Senator Reid was the Senate Minority Leader, wielding significant influence over the Administration in general and the Department in particular.  A committee staff-person stressed that "this matter is extremely time sensitive and we urge Interior to endeavor to get this under [the] wire before the new administration comes in."  WR_AR0005634-WR_AR0005637.  The Department responded that "we are aware of the deadline and have every intention of meeting it."  WR_AR0005634.  While expressing an intent to meet a deadline—even an accelerated one—does not exhibit bad faith *per se*, it does evidence, along with the pressure from the Tribe and the relevant Senate Committee, a strong indication that the agency had an "unalterably closed mind[]" to approve a decision taking the Elk Grove land into trust for the Tribe.  *See Air Transp. Ass'n of Am, Inc.*, 663 F.3d at 488.[4]

The Department also arguably acted inconsistently with its obligation to keep an open mind about the decision.  In the weeks leading up to the decision, the Plaintiffs repeatedly requested a delay in acquisition, both informally to the Department, through the judicial system

---

[4]  The Department contends that the process could not have been "rubber stamp[ed]" because despite emails pushing for acquiring the land by January 19, 2017, the land did not formally go into trust until February 10, 2017, early in the Trump Administration.  Fed. Defs.' Response 20.  But the delay was due to a title review, not the Department's consideration of public comments or acknowledgement of the "hectic" process up until that point.  *See id.* at 18, 20.  In any event, the most significant action was the Department's January 19, 2017 Record of Decision approving acquiring the Elk Grove land in trust for the Tribe, and the Plaintiffs make a *prima facie* showing that this decision was prejudged.

via a motion for a temporary restraining order, and through a formal request to the Department for a stay. Despite the compressed timeline it had to complete proceedings before issuing a decision, the Department used no additional time to consider the information before it and denied the formal request after the decision was already made. The Department also represented, on January 13, 2017, to a judge in this District that the timing of the decision-making process was "uncertain[]" and in part contingent on the number of public comments received. TRO Hr'g Tr., Jan. 13, 2017, 37:21-25. Yet just two days after the public comment period closed, *i.e.*, not even a week after the hearing, the Department issued its decision approving the acquisition of the land. These actions—in tandem with the other circumstances already discussed—establish a *prima facie* case that the Department acted improperly in making its decision.

The Department counters that the political pressure was not improper because there was no threat of funding cuts or other sanctions if the agency did not reach the desired outcome. Fed. Defs.' Response 21. Nor are there public statements by a public official that could have improperly influenced the decision. *Cf. Sierra Club v. Costle*, 657 F.2d 298, 409 (D.C. Cir. 1981) (holding that, in the context of a rulemaking, there was not improper Congressional pressure because the public official's comments related to a relevant factor to the decision and the agency's decision was not affected by extraneous considerations). But in a case factually similar to this one, the Western District of Wisconsin found that limited discovery was warranted in a challenge to a Department decision denying three tribes' application for a fee-to-trust land acquisition. *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1278 (W.D. Wis. 1997). That court—in granting a motion for reconsideration—explained that courts "should not overlook plausible, competing inferences that might be drawn from the evidence presented," *id.*

at 1281, and that even if "events of which plaintiffs complain could be considered innocent in and of themselves . . . their combination in this case raises substantial suspicion." *Id.* at 1286.

These are the precise circumstances presented here. It is plausible that the agency's actions are consistent with meeting a deadline and not further delaying the Tribe's application. It could also be that the compressed timeframe, the agency's stated desire to issue the decision before the change in Administrations—not only of the President, but also of the political party of that office-holder—and political pressure led to blinders being put on the agency and an "unalterably closed mind[]." *See Air Transp. Ass'n of Am, Inc.*, 663 F.3d at 488. A push to "clear the decks" before the end of a Presidential Administration is not alone sufficient to make the requisite showing of bad faith. But this combination of circumstances, though likely rare, establishes a *prima facie* case to warrant ordering the production of a privilege log.

As for the Plaintiffs' objection to the redaction of header information (*e.g.*, authors, recipients, transmission time, subject) from emails in the administrative record, since that information will be contained in a privilege log, this issue is moot.

## C. The Defendants Have Not Wholesale Waived Privilege for Communications with its Consultant

The deliberative process privilege, and its corollary, the so-called "consultant corollary" doctrine, protects documents between the agency and third parties enlisted to assist the agency in their decision-making process. *See McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011); *see also Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 83 (D.D.C. 2018) (explaining that for documents withheld from the administrative record, courts in this District apply the deliberative process privilege test as used in Freedom of Information Act cases or common law privilege cases). The Plaintiffs allege that the consultant, AES, "quite clearly

represents the Tribe's interests" because the Tribe retained AES and paid for its fees. Mot. to Supplement 22-23. The remedy for this impermissible conflict of interest, Plaintiffs allege, is that the Defendants waived privilege for communications with AES. *Id.* at 23. But the selection and retention of AES followed applicable federal regulations. *See* 40 C.F.R. § 1506.5(c) (requiring that the EIS "shall be prepared directly by or by a contractor selected by the lead agency"); WR_AR0000248 (stating that "AES is the environmental consulting firm that BIA selected in accordance with 40 CFR § 1506.5(c)); 46 Fed. Reg. at 18,031 (Mar. 23, 1981) (explaining that, for "third party contracting" under Section 1506.5(c), "[f]ederal procurement requirements do not apply to the agency because it incurs no obligations or costs under the contract").

Further, the agreement states that "BIA will provide technical and procedural oversight, and serve as lead agency for the National Environmental Policy Act (NEPA) document for the federal action." WR_AR0000248; *see also* WR_AR0000249 ("AES agrees to act as the project manager on behalf [of] and at the direction of BIA."). In a similar three-party situation in which "'AES agree[d] to act as the project manager *on behalf of* the BIA,' and BIA served as 'Lead Agency,'" another court in this District found that the BIA had control over the consultant's documents for FOIA purposes. *Forest Cnty. Potawatomi Cmty. v. Zinke*, 278 F. Supp. 3d 181, 195-96 (D.D.C. 2017). The same relationship and control over the consultant's documents exist here. The consulting agreement specifies that "all records that will be used by BIA in reaching the NEPA compliance decision . . . are the property of the BIA as works for hire." WR_AR0000249. The Department selected the contractor and solicited its analyses and input, which, as a general matter, is both predecisional to the January 19, 2017 Record of Decision, and

deliberative to the decision-making process. The Defendants have not wholesale waived the deliberative process privilege for documents with AES.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to supplement the administrative record will be denied, and the Plaintiffs' motion for discovery will be granted. A separate order will issue.

Dated: May 30, 2018

TREVOR N. MCFADDEN
United States District Judge